# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00222-CV

**Texas Department of Public Safety; Lt. Col. Lamar Beckworth, in his official capacity as Interim Director of the Texas Department of Public Safety; and Allan B. Polunsky, in his official capacity as Chairman of the Public Safety Commission, Appellants**

**v.**

**Miguel Salazar; Edgar Soria; Francisco Avila Trejo; Green Meadows Landscaping, Inc.; Eustolio Galvan; and Jose Gomez, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-09-000273, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## O P I N I O N

The Texas Department of Public Safety, the Interim Director of the Texas Department of Public Safety,[1] and the Chairman of the Public Safety Commission (collectively, the "Department"), appeal from the trial court's order granting a temporary injunction sought by appellees Miguel Salazar, Edgar Soria, Francisco Avila Trejo, Eustolio Galvan, Jose Gomez, and Green Meadows Landscaping (collectively, the "Appellees"). The trial court's order temporarily enjoined the Department from implementing and enforcing Rule 15.24, as amended, and Rule 15.171 of chapter 37 of the Texas Administrative Code. *See* 37 Tex. Admin. Code § 15.24 (2009) (Tex. Dep't of Pub. Safety, Identification of Applicants) (hereinafter, "Rule 15.24"); *id.* § 15.171 (2009)

---

[1] We substitute Lt. Col. Lamar Beckworth, in his official capacity, as successor to Stanley E. Clark, former director of the Texas Department of Public Safety. *See* Tex. R. App. P. 7.2.

(Tex. Dep't of Pub. Safety, Issuance of Driver Licenses & Identification Certificates to Non-citizens) (hereinafter, "Rule 15.171"). The trial court further enjoined the Department from issuing driver's licenses that are temporary or different in appearance from standard driver's licenses to individuals on the basis that they are not citizens or legal permanent residents of the United States or on the basis that they are legal permanent residents with an expiration date on their permanent resident card.

We hold that the Appellees' claims, with the exception of the challenges to Rules 15.24 and 15.171 brought by Green Meadows, Salazar, Soria, and Trejo, are barred by sovereign immunity. With respect to those claims that are not barred by sovereign immunity, we hold that the trial court abused its discretion in granting injunctive relief. Accordingly, we reverse the trial court's order issuing the temporary injunction.

**BACKGROUND**

The Department is authorized to adopt rules necessary to administer chapter 521 of the transportation code, governing the issuance of driver's licenses. *See* Tex. Transp. Code Ann. §§ 521.005, .291 (West 2007) (delegating rulemaking authority to the Department). Transportation code section 521.142 provides that an application for a driver's license must include any "information the [D]epartment requires to determine the applicant's identity, competency, and eligibility." *Id.* § 521.142(e) (West Supp. 2009); *see also id.* § 521.142(a) (requiring "presentation of proof of identity satisfactory to the [D]epartment"). Rule 15.24 describes the types of documents considered satisfactory proof of identity. In 2008, the Department amended the type of primary identification document described in subsection (1)(D) of Rule 15.24 from an "unexpired United States Bureau of Citizenship and Immigration Services document" to an "unexpired United States

2

Bureau of Citizenship and Immigration Services document issued for a period of at least one year and must be valid for not less than six (6) months from the date presented to the [D]epartment with a completed application."[2]

Also in 2008, the Department adopted Rule 15.171, titled "Issuance of Driver Licenses and Identification Certificates to Non-citizens." Rule 15.171 provides that if an applicant has less than six months remaining on his lawful admission period in the United States, no driver's license may be issued. Rule 15.171(a)(2). The rule further provides that if the applicant's lawful admission period is more than six months but less than the full term of a driver's license, the applicant will be issued a driver's license "with a status date displayed that coincides with the expiration of the applicant's lawful admission period in the United States." *Id.* at (a)(1). If the applicant's lawful admission period has an indefinite expiration date, the driver's license will be issued with a status date of one year from the date of the application. *Id.* at (a)(3). If the applicant cannot show valid documentation of a change or extension within 45 days from the status date, his driver's license will be cancelled. *Id.* at (c).

In September 2008, the Department issued an internal memorandum stating that licenses issued to certain non-citizen drivers would differ in appearance from standard driver's licenses by being vertically oriented and bearing a stamp stating, "Temporary Visitor." The

---

[2] Since 2006, subsection (1)(F) of Rule 15.24 has provided that a federally issued Form I-94 could only be used to establish identity if it was originally issued for at least one year and has at least six months of validity remaining at the time of the license application. Subsection (1)(F) is not at issue in this appeal.

3

memorandum further provided that such licenses would display the license holder's status date as required by Rule 15.171. This memorandum was never memorialized in a Department rule.

In response to the Department's amendment of Rule 15.24, adoption of Rule 15.171, and September 2008 internal memorandum, the Appellees filed suit seeking declaratory and injunctive relief under the Uniform Declaratory Judgments Act (UDJA), *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008), and section 2001.038 of the Administrative Procedure Act (APA), *see* Tex. Gov't Code Ann. § 2001.038 (West 2008).

The Appellees alleged that the enforcement of Rules 15.24 and 15.171 and the Department's policies as outlined in the memorandum would cause them probable injury. Specifically, Appellees Salazar, Soria, and Trejo assert that they are authorized workers under the federal H-2B work visa program, but cannot obtain driver's licenses under the new rules because their visas are only valid for ten months at a time.[3] Appellee Green Meadows, a landscaping business that relies on temporary employees working in the U.S. on H-2B work visas, alleges that the Department's new rules have prevented its H-2B workers from obtaining Texas driver's licenses, and therefore precluded Green Meadows from employing them as foremen, as that position requires the ability to drive work crews from one job site to another. Because of the resulting shortage of foremen, Green Meadows contends that it has been forced to forego obligations owed to its landscaping customers. Appellee Gomez, who holds a Class B commercial driver's license and

---

[3] The federal H-2B program allows employers in non-agricultural businesses to petition the federal government for permission to hire temporary labor and service workers from other countries if those positions cannot be filled by persons in the United States. *See* 8 U.S.C.A. § 1101(a)(15)(H)(ii)(a) (West Supp. 2009).

resides in the United States with temporary protected status, alleges that he has been denied a Class A driver's permit as a result of the Department's new rules, despite having taken and passed the required written examination.[4]  Finally, Appellee Galvan, a legal permanent resident of the United States, alleges that he was harmed by the Department's new rules and policies when he was mistakenly issued a non-standard driver's license indicating that he is a temporary visitor to the United States.

After a hearing, the trial court granted the Appellees' request for a temporary injunction, and this appeal followed.  On appeal, the Department argues that the trial court did not have subject-matter jurisdiction to grant the temporary injunction because the Appellees' claims are barred by sovereign immunity.  The Department further argues even if the trial court did have subject-matter jurisdiction, it abused its discretion in granting the temporary injunction.

## STANDARD OF REVIEW

We review the grant or denial of a temporary injunction for an abuse of discretion. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) ("The decision to grant or deny a temporary writ of injunction lies in the sound discretion of the trial court, and the court's grant or denial is subject to reversal only for a clear abuse of that discretion.").  A trial court abuses its discretion when it acts arbitrarily, unreasonably, and without reference to guiding rules or principles, or misapplies

---

[4]  Temporary protected status (TPS) is granted to eligible nationals of designated countries who are temporarily unable to safely return to their home country because of ongoing armed conflict, an environmental disaster, or other extraordinary and temporary condition.  *See id.* § 1254a (West 2005).

the law to the established facts of the case. *See Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003); *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding).

Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). Whether a trial court has subject-matter jurisdiction is a question of law we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007).

## DISCUSSION

### *Jurisdiction*

1.    *Subject-Matter Jurisdiction Under the APA*

In its first issue on appeal, the Department contends that the Appellees' claims are barred by sovereign immunity. Specifically, the Department argues that the Appellees have failed to assert a valid ultra vires claim sufficient to waive sovereign immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (describing "ultra vires exception" to sovereign immunity for suits alleging that state official acted without legal authority or failed to perform purely ministerial act).

However, if the Appellees have raised valid challenges to the Department's rules under the APA, then we need not determine whether the Appellees have properly alleged ultra vires claims because the trial court's subject-matter jurisdiction is established by section 2001.038 of the APA. *See* Tex. Gov't Code Ann. § 2001.038. Section 2001.038 allows a party to bring a declaratory-judgment action challenging the validity or applicability of an agency rule if it is alleged that the rule or its threatened application interferes with or impairs a legal right or privilege of the

6

plaintiff. *See id.* Section 2001.038 is considered a legislative grant of subject-matter jurisdiction, so that valid claims raised pursuant to that provision are not barred by sovereign immunity. *See Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex. App.—Austin 2009, no pet.) (collecting cases).

The Department argues that because the APA only expressly authorizes declaratory actions challenging agency rules, it does not establish subject-matter jurisdiction with respect to requests for injunctive relief. While section 2001.038 does not expressly mention injunctive relief, this Court has held that injunctive relief against a state agency is available under the APA, stating:

> The Commission's final point on appeal is that the trial court's order is void for attempting to enjoin a state agency. Ordinarily, a plaintiff must sue an individual in authority to enjoin the activities of a state agency. However, as discussed above, the trial court's jurisdiction over this matter was founded on the APA. It was therefore empowered to issue an injunctive order.

*Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators of Tex., Inc.*, 997 S.W.2d 651, 659 (Tex. App.—Austin 1999, pet. dism'd w.o.j.) (internal citations omitted); *see also Watson v. North Tex. Higher Educ. Auth., Inc.*, No. 03-00-00139-CV, 2000 Tex. App. LEXIS 7017, at *30-31 (Tex. App.—Austin Oct. 19, 2000, pet. dism'd by agr.) (mem. op.) (affirming trial court's denial of plea to jurisdiction on sovereign-immunity grounds in suit challenging agency rule under section 2001.038 and further affirming trial court's order temporarily enjoining agency from enforcing rule). Allowing plaintiffs to challenge the validity of an agency rule but barring injunctive relief preventing application of the challenged rule would defeat the purpose of section 2001.038, which "is to obtain a final declaration of a rule's validity *before* the rule is applied." *Rutherford Oil*

*Corp. v. General Land Office*, 776 S.W.2d 232, 235 (Tex. App.—Austin 1989, no writ). Therefore, we hold that if the Appellees raised valid rule challenges under the APA, the trial court had subject-matter jurisdiction to consider their claims for both declaratory and injunctive relief. To hold otherwise would nullify the relief afforded by section 2001.038 of the APA. *See id.* at 236 (stating that to hold that state agency could not be enjoined from applying rule subject to validity challenge would "wholly nullify" predecessor to section 2001.038 of APA).

The Department further contends that in order to seek injunctive relief against the State, the Appellees must bring a valid ultra vires claim against a state official, as opposed to the agency itself. *See Heinrich*, 284 S.W.3d at 373. We disagree. While the supreme court held in *Heinrich* that certain types of ultra vires suits must be brought against a state official, rather than the State or its subdivisions, the court noted that this rule did not apply to "claims challenging the validity of ordinances or statutes," because the UDJA "requires that the relevant government entities be made parties, and thereby waives immunity" for such validity claims. *Id.* at 373 n.6 (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b)). Similarly, the APA requires that the relevant state agency be made a party to any action challenging the validity of an agency rule, and thereby waives the agency's immunity with respect to such rule challenges. Tex. Gov't Code Ann. § 2001.038(c) ("The state agency must be made a party to the action.").

2.     *Does the APA Apply?*

Having determined that subject-matter jurisdiction is established by the APA for agency rule challenges, we must now determine whether the Appellees actually raised valid rule challenges under the APA in this case. As a preliminary matter, section 2001.038 requires that the

challenged action be "a rule." *See* Tex. Gov't Code Ann. § 2001.038(a). While there is no doubt that Rules 15.24 and 15.171 are agency rules, a closer examination is required to determine whether the Department's September 2008 internal memorandum qualifies as a "rule" that may be challenged under the APA.

Section 2001.003 of the APA defines a rule as a state agency statement of general applicability that "implements, interprets, or prescribes law or policy" or "describes the procedure or practice requirements of a state agency." Tex. Gov't Code Ann. § 2001.003(6) (West 2008). The definition of a rule "does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." *Id.* The Department's September 2008 memorandum describes internal procedures to be taken by Department staff in order to comply with Rule 15.171 and outlines the methods by which non-citizens are to be issued driver's licenses indicating "status dates" as required by that rule. *See* Rule 15.171. The complained-of portion of the memorandum is a statement that non-citizen driver's licenses will be produced "in a vertical card format with a red box around the photograph, a statement at the top of the card ('Temporary Visitor'), and a secondary statement near the photograph which will include the [] status expiration date." Because the inclusion of a status date is required by Rule 15.171, the memorandum does not reflect rulemaking in connection with that issue, but merely reiterates what is already contained in Rule 15.171. The question then becomes whether the "Temporary Visitor" designation and the vertical format of the licenses described in the memorandum constitute improper agency rulemaking.

9

Not every administrative pronouncement is a rule within the meaning of the APA. *See Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 443 (Tex. 1994). In order to be considered statements of "general applicability" as described in section 2001.003(6), agency pronouncements must "affect the interest of the public at large such that they cannot be given the effect of law without public input." *Railroad Comm'n v. WBD Oil & Gas Co.*, 104 S.W.3d 69, 79 (Tex. 2003). Agency statements that "have no legal effect on private persons" are not considered rules. *Brinkley v. Texas Lottery Comm'n*, 986 S.W.2d 764, 770 (Tex. App.—Austin 1999, no pet.).

The Appellees have not identified any public interest in ensuring that all qualified applicants receive a horizontally oriented driver's license or a driver's license free from any "Temporary Visitor" designation.[5] The Appellees have also failed to identify any legal effect on private persons as a result of the Department's policy. It is undisputed that the vertically oriented driver's licenses, including the "Temporary Visitor" designation, remain valid Texas driver's licenses, despite their non-standard appearance. The Department's internal policy regarding the appearance of driver's licenses as outlined in the memorandum does not affect the interest of the public such that it cannot be altered without public input, nor does it have any legal effect on private persons. On that basis, we hold that the Department's September 2008 memorandum does not qualify as a rule under the APA. *See WBD Oil & Gas Co.*, 104 S.W.3d at 79; *Brinkley*, 986 S.W.2d at 770; *see also* Tex. Gov't Code Ann. § 2001.003(6).

---

[5] Licenses issued to individuals under the age of 21 are vertically oriented as required by statute. *See* Tex. Transp. Code Ann. § 521.123 (West 2007) (requiring Department to "orient the information on the license to clearly distinguish the [under 21] license from a license that is issued to a person who is 21 years of age or older").

Because the Department's internal memorandum does not qualify as a rule under the APA, section 2001.038 does not confer subject-matter jurisdiction on the trial court to consider the Appellees' request for declaratory and injunctive relief with respect to the memorandum. *See generally Entertainment Publ'ns*, 292 S.W.3d at 723 (first resolving issue of whether agency action constituted rule under APA in the affirmative before concluding that trial court had jurisdiction to consider validity challenge).

3.    *Subject-Matter Jurisdiction Under the UDJA: The September 2008 Memorandum*

While the Appellees also seek relief under the UDJA, the UDJA is not a general waiver of sovereign immunity and does not enlarge a trial court's jurisdiction. *See Heinrich*, 284 S.W.3d at 370; *State of Texas v. BP Am. Prod. Co.*, 290 S.W.3d 345, 360 (Tex. App.—Austin 2009, pet. filed). Therefore, if the memorandum represents an act within the legal authority and discretion of the Director, any challenge to the memorandum represents an attempt to control state action and is barred by sovereign immunity. *See Heinrich*, 284 S.W.3d at 372. On the other hand, if a party alleges, and can ultimately prove, that a state official has acted outside his legal authority, that party's ultra vires claims are considered attempts to reassert the control of the State and are not barred by sovereign immunity.[6] *See id.*

---

[6] As the supreme court explained in *Heinrich*, ultra vires suits may only be brought against the relevant government actors in their official capacity, rather than the state agency itself. *See* 284 S.W.3d at 373. Therefore, even if we determine that the Appellees have raised a valid ultra vires claim with respect to the September 2008 memorandum, that claim remains barred by sovereign immunity to the extent it is brought against any party other than the Director of the Department.

11

However, because the Appellees lack standing under the UDJA, we need not reach the issue of whether they have raised a valid ultra vires claim alleging acts beyond the Director's authority. While private parties may seek declaratory relief in connection with an alleged ultra vires act, "[a] declaratory judgment requires a justiciable controversy as to the rights and status of parties actually before the court for adjudication, and the declaration sought must actually resolve the controversy." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004). To establish standing under the UDJA, the Appellees must show "a particularized, legally protected interest that is actually or imminently affected by the alleged harm." *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, __ S.W.3d ___, ___, No. 03-04-00683-CV, Tex. App. LEXIS 5114, at *23 (Tex. App.—Austin 2009, no pet. h.). As discussed above, the Appellees have not alleged any cognizable legal effect on private persons as a result of the Department's September 2008 memorandum, as it merely alters the appearance of certain driver's licenses. The Appellees have not shown that receipt of a Texas driver's license that is standard in appearance, as opposed to vertically oriented and stamped with a "Temporary Visitor" designation, is a recognizable legally protected interest. On that basis, we hold that the Appellees have not established standing to challenge the Department's September 2008 memorandum under the UDJA, and therefore that the trial court lacked subject-matter jurisdiction to resolve the issue.

#### 4.     *Standing Under the APA: Rules 15.24 and 15.171*

We now turn to the question of whether the Appellees have standing to challenge Rules 15.24 and 15.171 under the APA.[7]  In order to have standing under section 2001.038, the Appellees must have alleged that the challenged rules or their threatened application "interfere[] with or impair[], or threaten[] to interfere with or impair, a legal right or privilege of the plaintiff."  Tex. Gov't Code Ann. § 2001.038.

While a driver's license is not a legal right, it is considered a privilege.  *See Texas Dep't of Pub. Safety v. Schaejbe*, 687 S.W.2d 727, 728 (Tex. 1985).  Appellees Salazar, Soria, and Trejo have all alleged that due to their immigration status, they are not eligible to obtain Texas driver's licenses under Rules 15.24 and 15.171.  Under these rules, a non-citizen's immigration documentation from the federal government must have been originally issued for a period of at least one year.  Salazar, Soria, and Trejo work in the United States through the federal H-2B program on visas issued for a period of approximately ten months.  While they generally receive extensions from the federal government, the fact that their visas are originally issued for a period of less than a year prevents them from obtaining a Texas driver's license under the new rules.  As a result, Salazar, Soria, and Trejo have demonstrated that the new rules interfere with their privilege to obtain a Texas driver's license, giving them standing to challenge the rules under section 2001.038 of the APA.

---

[7] To the extent the Appellees also seek relief under the UDJA in connection with these rule challenges, we dismiss those claims for want of jurisdiction on the ground that a party may not seek relief under the UDJA when such relief would be redundant to relief under the APA. *See Texas State Bd. of Plumbing Exam'rs v. Associated Plumbing-Heating-Cooling Contractors of Tex., Inc.*, 31 S.W.3d 750, 753 (Tex. App.—Austin 2000, pet. dism'd by agr.) ("When a plaintiff files a proceeding that only challenges the validity of an administrative rule, the parties are bound by the APA and may not seek relief under the UDJA because such relief would be redundant.").

Green Meadows alleges that it relies on H-2B workers in conducting its landscaping business, and that due to the seasonal nature of its business, the H-2B visas it requests for its workers are valid for a period of ten months. Because the visas held by the H-2B workers employed by Green Meadows are valid for less than one year, these workers are precluded from obtaining a Texas driver's license under the new rules. According to Green Meadows, it cannot employ workers without driver's licenses as foremen, because the foremen must be able to drive work crews from one job site to another. Green Meadows further contends that the resulting shortage of foremen has prevented it from fulfilling obligations to its landscaping customers.

The ability of an employer to participate in federal guest-worker programs, such as the H-2B program, is a privilege created by federal law. *See* 8 U.S.C.A. § 1101(a)(15)(H)(ii)(a) (West Supp. 2009). Green Meadows has alleged that the Department's new rules threaten to impair this privilege by preventing its H-2B employees from obtaining Texas driver's licenses, thus limiting Green Meadows's ability to utilize these employees in its business. Therefore, we hold that Green Meadows has sufficiently established standing to challenge the new rules under the APA.

Appellee Gomez, who holds a Texas Class B commercial driver's license, alleges that he was denied a Class A driver's permit in March 2009 as a result of the Department's new rules, despite having taken and passed the required written examination. The record reflects that Gomez's immigration documentation is valid from March 10, 2009, to September 9, 2010. Gomez testified at the temporary-injunction hearing that he applied for the Class A permit sometime in March 2009. When asked whether he applied for a Class A permit before or after March 10, 2009, Gomez responded, "I think before." However, the trial court later asked Gomez whether he provided the

14

immigration document entered into evidence—the document reflecting that his valid immigration status extends from March 10, 2009, to September 9, 2010—when applying for the license, and Gomez answered, "Correct." It is unclear why Gomez was denied the Class A permit, as his immigration document was valid for more than one year at the time it was issued and remained valid for more than six months at the time he applied for the license. If the problem stemmed from his applying for the license prior to the March 10, 2009 effective date of his immigration document, it would have been remedied on that date, and in fact, Gomez's immigration document remains sufficient to obtain a license under the new rules until March 2010, at which time it will no longer have six months of validity remaining. Because Gomez has not established that Rules 15.24 and 15.171 have interfered with or impaired his ability to obtain a Class A license, we hold that he lacks standing to challenge Rule 15.24 and 15.171 under the APA.[8]

Similarly, appellee Galvan has not established that the Department's new rules have impaired or interfered with a legal right or privilege. The Department concedes that Galvan, as a legal permanent resident of the United States, was entitled to a standard license reflecting an expiration date six years from the date it was issued, but that he was issued a vertically oriented license stamped "Temporary Visitor" by mistake. While this turn of events is unfortunate, it is not an indication Rule 15.24 or Rule 15.171 impairs or interferes with or threatens to impair or interfere

---

[8] For the same reason, even if we considered Gomez's rule challenge to be a valid ultra vires claim under the UDJA, he has failed to establish a justiciable controversy and therefore lacks standing under the UDJA as well.

with Galvan's legal privilege to obtain a Texas driver's license. Therefore, Galvan has not established standing to challenge these rules.[9]

In light of the foregoing, we hold that the trial court properly exercised subject-matter jurisdiction over the challenges to Rules 15.24 and 15.171 brought by Green Meadows, Salazar, Soria, and Trejo under section 2001.038 of the APA. The Appellees' challenge to the Department's September 2008 memorandum, Gomez and Galvan's rule challenges, and all claims raised pursuant to the UDJA, are dismissed for want of jurisdiction.

***Temporary Injunction***

We now turn to the Department's second issue on appeal, in which it argues that the trial court abused its discretion in determining that the Appellees established the elements necessary to entitle them to a temporary injunction.[10] *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993) (stating that trial court's decision to grant or deny temporary injunction is reviewed for abuse of discretion). "To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

---

[9] Like Gomez, Galvan has also failed to establish a justiciable controversy that would give him standing under the UDJA in the event of a valid ultra vires claim regarding the Department's rules.

[10] In light of our holding on the jurisdictional question, we need only determine whether Green Meadows, Salazar, Soria, and Trejo established the elements necessary to entitle them to a temporary injunction, as the remaining appellees have been dismissed.

In support of the argument that they would suffer a probable, imminent, and irreparable injury in the absence of a temporary injunction, Salazar, Soria, and Trejo contend that the Department's new rules prevent them from obtaining Texas driver's licenses, which in turn prevents them from receiving promotions at work and forces them to rely on others for transportation to work or to obtain medical care if needed. Green Meadows argues that application of the Department's rules would disrupt its business by restricting the number of employees that can act as foremen and drive work crews to various job sites.

The Department asserts, however, that even viewing the evidence in the light most favorable to the trial court's order, as we must to do in reviewing a temporary injunction, *see CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ), the Appellees have failed to establish a probable, imminent, and irreparable injury that they would suffer in the absence of a temporary injunction.

Establishing probable, imminent, and irreparable injury requires proof of an actual threatened injury, as opposed to a speculative or purely conjectural one. *Dallas General Drivers, Warehousemen & Helpers v. Wamix, Inc.*, 295 S.W.2d 873, 879 (Tex. 1956). Fear or apprehension of possible injury is insufficient to support a finding of imminent injury. *Frey v. DeCordova Bend Estates Owners Ass'n*, 647 S.W.2d 246, 248 (Tex. 1983). The question of whether a probable, imminent, and irreparable injury exists to warrant injunctive relief is a legal question for the court. *Operation Rescue-National v. Planned Parenthood*, 975 S.W.2d 546, 554 (Tex. 1998). Furthermore, a temporary injunction will not be granted "where there is a plain and adequate remedy at law." *McGlothlin v. Kliebert*, 672 S.W.2d 231, 232 (Tex. 1984).

17

To the extent Salazar, Soria, and Trejo cite their inability to drive in Texas for purposes of driving to work, obtaining food and other necessities, or seeking medical care if necessary, there are alternatives to a standard Texas driver's license that create an adequate remedy to this potential harm. Section 521.030 of the transportation code provides that a non-resident from an approved country of residence who holds a license in his or her country of residence may rely on that reciprocal license to legally drive in Texas without obtaining a Texas driver's license. Tex. Transp. Code Ann. § 521.030 (West 2007). Mexico, the country of residence for Salazar, Soria, and Trejo, is on the list of approved countries for the use of reciprocal licenses. *See* 37 Tex. Admin. Code § 15.91(b)(6) (2009) (Tex. Dep't of Pub. Safety, Int'l Reciprocity). Rule 15.91 also provides that "[r]eciprocal privileges are limited to private vehicles. Carriage of . . . goods other than personal baggage of the occupants of the vehicles is not authorized." *Id.* § 15.91(d)(2). This would appear to exclude any transporting of landscaping work crews and their equipment. However, for everyday driving purposes, the statute and regulation authorizing reciprocal licenses foreclose Salazar, Soria, and Trejo from arguing that in the absence of a temporary injunction, they would suffer imminent, irreparable injury for which there is no adequate remedy.[11]

---

[11] Based on the testimony provided at the temporary-injunction hearing, it appears that Salazar holds a license from Mexico, but that Soria and Trejo do not. However, the question at issue here is whether an adequate remedy is available, not whether the parties have actually availed themselves of that remedy. Furthermore, "[t]he lack of an adequate remedy is not shown by the mere fact that the remedy provided would involve more expense or delay." *Kendall Appraisal Dist. v. Cordillera Ranch, Ltd.*, No. 04-03-00150-CV, 2003 Tex. App. LEXIS 6293, at *10 (Tex. App.—San Antonio July 23, 2003, no pet.) (citing *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 306 (Tex. 1994)).

Salazar, Soria, and Trejo further argue that because they are unable to obtain Texas driver's licenses, they are unable to seek promotions at work, as the position of foreman requires a driver's license. Salazar, Soria, and Trejo have presented no evidence that they are otherwise qualified or eligible for a promotion to the position of foreman. As a result, their inability to seek a possible promotion without a Texas driver's license does not represent an imminent injury, but a speculative or merely conjectural one. *See Butnaru*, 84 S.W.3d at 204 (stating that applicant for temporary injunction has burden of pleading and proving probable, imminent, and irreparable injury). Therefore, we hold that Salazar, Soria, and Trejo do not meet the required elements of temporary injunctive relief.

Similarly, Green Meadows's assertion that it will eventually run out of employees eligible to work as foremen is merely conjectural, and does not represent the type of imminent, irreparable injury required to qualify for temporary injunctive relief. Furthermore, while Green Meadows argues that it is harmed by its inability to promote from within the company, there is no indication that Green Meadows is in any way precluded from hiring additional employees who possess valid Texas driver's licenses to serve as foremen. As a result, Green Meadows has not shown that its inability to promote from within creates a probable, imminent, and irreparable injury for which there is no other adequate remedy.

Based on our conclusion that the Appellees have failed to establish the existence of a probable, imminent, irreparable injury for which there is no adequate remedy, we hold that the trial court abused its discretion in temporarily enjoining the Department from enforcing Rules 15.171 and 15.24.

**CONCLUSION**

We hold that the challenges to Rules 15.24 and 15.171 brought by Green Meadows, Salazar, Soria, and Trejo are not barred by sovereign immunity. However, because the necessary elements for temporary injunctive relief were not met, we reverse the trial court's order issuing injunctive relief with respect to those claims. All of Appellees' remaining claims are dismissed for lack of subject-matter jurisdiction on the basis of sovereign immunity.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Reversed and Rendered in Part, Dismissed in Part

Filed:   December 31, 2009