# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00316-CV

**City of Killeen, Texas and Ground Game Texas, Appellants**

**v.**

**Bell County, Texas; the 27th Judicial District Attorney's Office; and
the Bell County Attorney's Office; Appellees**

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 23DCV338257, THE HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The City of Killeen, Texas (the City), and Ground Game Texas appeal from the trial court's denial of their pleas to the jurisdiction seeking to dismiss the lawsuit filed by Bell County, Texas; the 27th Judicial District Attorney's Office (the DA's Office); and the Bell County Attorney's Office (the CA's Office).[1] Appellees' lawsuit challenges the constitutionality and validity of the City's ordinance decriminalizing misdemeanor marijuana possession. For the following reasons, we affirm the trial court's order denying appellants' plea to the jurisdiction.

---

[1] The live petition also purports to name the State of Texas as a plaintiff, but the State is not in fact a plaintiff, evidenced by its filing of an amicus curiae brief in this Court. *See Connor v. McCormick*, No. 03-18-00813-CV, 2020 WL 102034, at *5 (Tex. App.—Austin Jan. 9, 2020, pet. denied) (mem. op.) ("An *amicus curiae* is not a party to the suit and may only make suggestions to the court; the court can only take actions that it could have taken in the absence of the suggestions from the *amicus curiae*."). The State filed its own lawsuit against the City on January 1, 2024, raising the same challenges as in this suit; that lawsuit is currently pending in Bell County District Court.

**BACKGROUND**

This case concerns the City's adoption, by ordinance codified in the City's Code of Ordinances, of a proposition approved by the City's voters on November 8, 2022, that decriminalizes the possession of misdemeanor amounts of marijuana. Among the Ordinance's provisions are the following:

(a) Killeen police officers shall not issue citations or make arrests for class A or class B misdemeanor possession of marijuana offenses, except in the limited circumstances described in (b).

(b) The only circumstances in which Killeen police officers are permitted to issue citations or make arrests for class A or class B misdemeanor possession of marijuana are when such citations or arrests are part of (1) the investigation of a felony level narcotics case that has been designated as a high priority investigation by a Killeen police commander, assistant chief of police, or chief of police; and/or (2) the investigation of a violent felony.

(c) In every instance other than those described in (b), if a Killeen police officer has probable cause to believe that a substance is marijuana, an officer may seize the marijuana. If the officer seizes the marijuana, they must write a detailed report and release the individual if possession of marijuana is the sole charge.

(d) Killeen police officers shall not issue any charge for possession of marijuana unless it meets at least one (1) of the factors described in (b).

Killeen, Tex., Code § 22-80; *see also id.* §§ 22-81–22-86 (containing related provisions and together comprising Police, Article V, Chapter 22 of Killeen City Code).[2]

---

[2] Other substantive provisions of the Ordinance prohibit the issuance of citations for Class C misdemeanor possession of drug residue or drug paraphernalia in lieu of a possession-of-marijuana charge, *see* Killeen, Tex., Code § 22-81, and the use of City funds or personnel to conduct THC testing of any cannabis-related substance to determine whether it meets the legal definition of marijuana under state law except in enumerated circumstances, *see id.* § 22-82. It also requires the City Manager and Chief of Police to ensure that police officers receive adequate training concerning the Ordinance's provisions. *See id.* § 22-84.

On December 22, 2022, the Bell County Commissioners unanimously authorized the Bell County Attorney to file suit against the City on behalf of Bell County (the County). On April 11, 2023, the Bell County Attorney, joined by the Bell County District Attorney, filed an original petition against the City, naming as plaintiffs the County and the State of Texas. In the lawsuit, the plaintiffs pleaded for declaratory relief under the Uniform Declaratory Judgments Act (UDJA) determining that the Ordinance is invalid and unconstitutional. *See* Tex. Civ. Prac. & Rem. Code §§ 37.004(a) (relevantly providing that person whose rights are affected by ordinance may obtain declaration of their rights thereunder and have determined "any question as to construction or validity" of ordinance), .006(b) (requiring municipality to be made party to proceeding involving validity of ordinance). The plaintiffs additionally pleaded for temporary and permanent injunctive relief enjoining enforcement of the Ordinance.

Among other grounds purportedly supporting invalidity, the plaintiffs alleged that the Ordinance is preempted by Texas Local Government Code Section 370.003. *See* Tex. Loc. Gov't Code § 370.003 (prohibiting governing body of municipality from adopting policy "under which the entity will not fully enforce laws relating to drugs"); *see also, e.g.*, Tex. Health & Safety Code § 481.121 (making possession of marijuana either Class A or B misdemeanor offense depending on amount possessed). Plaintiffs alleged that the Ordinance—forbidding City police officers from issuing citations or making arrests for Class A or B misdemeanor marijuana possession, except under enumerated circumstances, and from signing complaints in such cases—cannot be reconciled with state laws such as Local Government Code Section 370.003 and Health and Safety Code Section 481.121, among others. Plaintiffs additionally alleged that the Ordinance is inconsistent with provisions of the Texas Code of Criminal Procedure, including Article 2.13, requiring peace officers to seize contraband. *See* Tex. Code Crim. Proc.

3

art. 2.13(b)(1), (4) (requiring officers to "interfere without warrant to prevent or suppress crime" and "arrest offenders without warrant in every case where the officer is authorized by law").

The City filed a combined pleading containing special exceptions, a plea to the jurisdiction, and an original answer. In its plea to the jurisdiction and supplement thereto, the City contended that (1) it enjoys governmental immunity from suit, and the plaintiffs had not alleged a valid waiver for their claims seeking injunctive relief; (2) each of the plaintiffs lacks standing; (3) none of the plaintiffs has authority to bring civil claims in the name of the State; and (4) plaintiffs' failure to verify their petition is a fatal defect to their claims for injunctive relief. Plaintiffs did not file a response but instead filed an amended petition, adding as plaintiffs the DA's Office and the CA's Office. In their amended petition, the plaintiffs represented that they served the Texas Attorney General with a copy of the pleading, as required by the UDJA. *See* Tex. Civ. Prac. & Rem. Code § 37.006(b) (requiring that Attorney General be served with copy of any proceeding that involves constitutionality of statute or ordinance and that Attorney General "is entitled to be heard"). The Attorney General did not intervene in the case. Ground Game intervened as a defendant and filed a plea to the jurisdiction, in which it asserted that none of the plaintiffs has standing and that plaintiffs' principal complaints are political rather than legal and are not redressable in a court of law.[3] The trial court denied the City's and Ground Game's respective pleas to the jurisdiction, and this accelerated appeal followed.

---

[3] According to the declaration of Ground Game's executive director, Ground Game is a "nonprofit advocacy organization that has its headquarters in Austin, Texas, and operates programs across the state," working with "community-based organizations to develop ballot initiative campaigns that focus on popular, progressive issues."

4

**DISCUSSION**

A plea to the jurisdiction challenges the court's authority to decide a case, inclusive of issues such as standing. *Heckman v. Williamson County*, 369 S.W.3d 137, 149–50 (Tex. 2012). We review a trial court's ruling on subject-matter jurisdiction de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). In determining a plea to the jurisdiction, the court looks to the live pleadings and may also consider evidence submitted to negate the existence of jurisdiction. *Heckman*, 369 S.W.3d at 150. A plaintiff's pleadings are liberally construed, and all factual assertions are taken as true but, nonetheless, a plea to the jurisdiction must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if there is undisputed evidence negating the existence of the court's jurisdiction. *Id.*

In four issues, the City contends that (1) none of the appellees articulated a particularized harm to support standing; (2) each appellee lacks capacity and authority to bring this lawsuit; (3) appellees failed to meet their burden to establish waiver of governmental immunity as to injunctive relief; and (4) appellees' defective jurat and verification of their petition were fatal to their claims. In two issues, Ground Game contends that the trial court erred in ruling that appellees (1) established a waiver of the City's governmental immunity and pleaded a viable facial challenge to the Ordinance and (2) have standing to challenge the Ordinance because they have not identified an actual or threatened injury-in-fact.

As a home-rule municipality, the City possesses the "full power of local self-government." *City of Laredo v. Laredo Merchants Ass'n*, 550 S.W.3d 586, 592 (Tex. 2018) (quoting Tex. Loc. Gov't Code § 51.072(a)). But Article XI, Section 5(a) of the Texas Constitution provides that a home-rule city ordinance may not "contain any provision

5

inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." *Id.* (quoting Tex. Const. art. XI, § 5(a)). Thus, the legislature has the authority to preempt local regulations such as ordinances, *see id.* at 593, and the substantive dispute here is whether the legislature has preempted the Ordinance with its applicable penal laws. However, because of the procedural posture—an interlocutory appeal from the denial of a governmental unit's plea to the jurisdiction—the resolution of that substantive dispute is for another day. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (authorizing interlocutory appeal of order granting or denying governmental unit's plea to jurisdiction); *Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 841 (Tex. 2007) (stating that courts must strictly construe Section 51.014(a) as narrow exception to general rule that only final judgments are appealable).

*Standing*

The City and Ground Game challenge each plaintiff's standing, the City in its first issue and Ground Game in its second issue. Standing is a component of subject-matter jurisdiction, and we review questions of standing de novo. *Farmers Tex. Cnty. Mut. Ins. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). Standing is implicit in the concept of subject-matter jurisdiction, and subject-matter jurisdiction is essential to the authority of a court to decide a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).

A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority. *Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001). Standing requires "a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court." *Heckman*, 369 S.W.3d at 154. A plaintiff does not lack standing simply because some other legal principle may prevent

6

it from prevailing on the merits; rather, a plaintiff lacks standing if its "claim of injury is too slight for a court to afford redress." *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021) (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 305 (Tex. 2008)). The threshold inquiry in a question of standing "in no way depends on the merits of the [plaintiff's] contention that particular conduct is illegal." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011) (quotations omitted).

The test for standing in most cases requires the plaintiff to show that (1) the plaintiff was personally injured, (2) the alleged injury is "fairly traceable" to the defendant's conduct, and (3) the alleged injury is "likely to be redressed by the requested relief." *See Heckman*, 369 S.W.3d at 154–55. To establish standing under the UDJA, a plaintiff must show a particularized, legally protected interest that is actually or imminently affected by the alleged harm. *Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 906 (Tex. App.—Austin 2009, no pet.); *see Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 882 (Tex. App.—Austin 2010, pet. denied) ("Under the UDJA, SOS Alliance must establish standing by alleging an injury in fact to a 'legally protected interest which is . . . concrete and particularized.'" (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995) ("[T]o challenge a statute, a plaintiff must [both] suffer some actual or threatened restriction under the statute" and "contend that the statute unconstitutionally restricts the plaintiff's rights."). Here, the alleged actionable "harm" is the Ordinance, which essentially prohibits City police officers from enforcing the State's misdemeanor marijuana laws.

Generally, courts must analyze the standing of each individual plaintiff to bring each individual claim he or she alleges. *Heckman*, 369 S.W.3d at 152; *see also Patel v. Texas*

7

*Dep't of Licensing & Regul.*, 469 S.W.3d 69, 77 (Tex. 2015) (citing *Heckman*, 369 S.W.3d at 152). However, "where there are multiple plaintiffs in a case, who seek injunctive or declaratory relief (or both), who sue individually, and who all seek the same relief[,] . . . the court need not analyze the standing of more than one plaintiff—so long as that plaintiff has standing to pursue as much or more relief than any of the other plaintiffs." *Heckman*, 369 S.W.3d at 152 n.64. The reasoning is simple: if one plaintiff prevails on the merits, the same prospective relief will issue regardless of the standing of the other plaintiffs. *Id.*; *see also Andrade*, 345 S.W.3d at 6 ("Because the voters seek only declaratory and injunctive relief, and because each voter seeks the same relief, only one plaintiff with standing is required."). We thus consider whether any plaintiff has alleged a recognizable legally protected interest or right that is affected by the Ordinance.

We begin by considering whether the DA's Office has standing because we find the answer dispositive of the City's first issue and Ground Game's second. The DA's Office alleged that it has standing because the Ordinance interferes with its prosecutorial discretion, "chill[ing] investigation into marijuana drug offenses" and thus "guarantee[ing] that in many cases such offenses are never reported or investigated, . . . imped[ing] the prosecuting attorneys from weighing any factors to exercise the[ir] discretion to prosecute." The DA's Office alleged that although the Ordinance targets misdemeanor-level offenses, it impacts felony cases because "felony prosecutors weigh prior arrests and convictions when determining whether to charge new offenses, as well as what the punishment recommendation should be on an existing case." It alleged that "felony prosecutors use new arrests on any violation of the law to make recommendations regarding bond," and that without such arrests the prosecuting attorneys' discretion to make alternative recommendations with respect to persons on community

8

supervision or pretrial bond—such as sanctions, drug treatment, or more intensive supervision—will be hampered.  Finally, the DA's Office alleged that the Ordinance impedes its prosecutorial discretion by prohibiting City police officers from making arrests for misdemeanor levels of marijuana possession and "deterring those same officers from even preparing reports," depriving the prosecuting attorneys from having prior-arrest information when carrying out their prosecutorial duties.

The DA's Office correctly observes that its prosecutorial discretion derives from its primary duty to "see that justice is done" and to enforce the State's criminal laws.  *See* Tex. Code Crim. Proc. art. 2.01 ("It shall be the primary duty of all prosecuting attorneys . . . not to convict, but to see that justice is done."); *Meshell v. State*, 739 S.W.2d 246, 254 (Tex. Crim. App. 1987) ("Although the duties of district or county attorneys are not enumerated in Article V, § 21 [of the Texas Constitution], our courts have long recognized that, along with various civil duties, their primary function, is 'to prosecute the pleas of the state in criminal cases.'" (quoting *Brady v. Brooks*, 89 S.W. 1052, 1056 (Tex. 1905)).  An "obvious corollary" to this duty is the county and district attorneys' "exclusive prosecutorial function" and discretion, which—under the separation-of-powers doctrine—the legislature "may not remove or abridge" absent an express constitutional provision.  *Meshell*, 739 S.W.2d at 254–55.  Similarly, the office of a district attorney is constitutionally created and protected; thus, the district attorney's authority "cannot be abridged or taken away."  *Buntion v. State*, 482 S.W.3d 58, 76 (Tex. Crim. App. 2016) (citing *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 4 (Tex. Crim. App. 1990)).  If the legislature may not abridge such prosecutorial discretion through legislation, it follows that neither may the City through the passage of ordinances.  Yet this is what the DA's Office alleges the City has done.

9

Because we are not deciding the merits of this case, *see Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000), and must liberally construe the plaintiffs' pleadings and take as true the allegations therein, *see Heckman*, 369 S.W.3d at 150, we confine our analysis to determining whether the DA's Office has sufficiently alleged that the Ordinance affects or impairs one of its legally protected rights or interests. *See Salazar*, 304 S.W.3d at 906. Given that district and county attorneys have a legal duty to prosecute violations of the State's criminal laws, and in light of the Court of Criminal Appeals' prohibition on the abridgement of prosecutors' discretion and functions absent constitutional amendment, *see Meshell*, 739 S.W.2d at 254–55, we conclude that the DA's Office has sufficiently established standing. That is, it has identified a legally protected interest—its prosecutorial authority, discretion, and duty—that is actually or imminently affected or impeded by the Ordinance, in that the Ordinance eliminates an entire swath of misdemeanor drug arrests and citations from its purview, frustrating its ability to carry out its duty and exercise its discretion. *See Salazar*, 304 S.W.3d at 906. Moreover, appellants have not cited evidence in the record negating the DA's Office's allegations of such harm.[4] The DA's Office therefore has standing to maintain this UDJA action challenging the Ordinance. Furthermore, as explained above, because we have determined that the DA's Office has standing, we need not consider whether the remaining appellees have standing. *See Heckman*, 369 S.W.3d at 152 n.64. We accordingly overrule the City's first issue and Ground Game's second issue.

---

[4] Appellants cite evidence showing that City police officers have made some misdemeanor marijuana-possession arrests since the Ordinance took effect, but that evidence does not refute the DA's Office's allegations that the Ordinance *itself* interferes with its prosecutorial discretion and duties by prohibiting police officers from making arrests or issuing citations for such violations except in enumerated circumstances, as the officers are presumed to follow applicable laws, necessarily including the Ordinance. *See Williams v. Lara*, 52 S.W.3d 171, 184–85 & 185 n.8 (Tex. 2001) (people are presumed to "follow the law").

*Capacity*

In its second issue, the City contends that each appellee lacks capacity, or legal authority, to bring this suit on behalf of the State and that the DA's Office and CA's Office both lack capacity to bring civil actions themselves because they are merely "departments" within the City and County, respectively. While capacity is a requirement for a party to bring a lawsuit, *see Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005), capacity does not implicate subject-matter jurisdiction and therefore does not constitute a proper ground on which to grant a plea to the jurisdiction, *see Pike v. Texas EMC Mgmt., LLC*, 610 S.W.3d 763, 779 (Tex. 2020); *see also Travis Cent. Appraisal Dist. v. Texas Disposal Sys. Landfill, Inc.*, 684 S.W.3d 470, n.2 (Tex. App.—Austin 2022) (mem. op., on motion for reh'g) ("To the extent that the district court granted the Landfill's second plea to the jurisdiction and dismissed the cause on the ground that the chief appraiser lacked capacity to appeal the ARB order, we conclude that it erred."), *aff'd*, 694 S.W.3d 752 (Tex. 2024). Because the issue of capacity does not bear on the question of whether the trial court erred in denying appellants' pleas to the jurisdiction and would not support a reversal of the trial court's ruling even were the City's capacity arguments meritorious, we lack appellate jurisdiction to address the City's second issue in this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8); *Koseoglu*, 233 S.W.3d at 841.

*Waiver of governmental immunity*

In its first issue, Ground Game contends that appellees failed to establish waiver of the City's immunity as to their facial challenge to the Ordinance; in its third issue, the City contends that appellees failed to establish waiver of its governmental immunity as to their claims

11

for injunctive relief. As to Ground Game's issue, it is established under Texas law that the UDJA waives governmental immunity of a municipality when there is a challenge to the validity of an ordinance, including to the ordinance's constitutionality. *See* Tex. Civ. Prac. & Rem. Code §§ 37.004, .006(b) (providing that municipality must be made party to suit involving validity of ordinance and that attorney general must be served with copy of pleading if ordinance is alleged to be unconstitutional); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009) ("For claims challenging the validity of ordinances or statutes . . . the [UDJA] requires that the relevant governmental entities be made parties, and thereby waives immunity."); *Gatesco Q.M., Ltd. v. City of Houston*, 333 S.W.3d 338, 347–48 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("If a party joins a governmental entity and seeks a declaration that an ordinance or statute is invalid, based on either constitutional or nonconstitutional grounds, immunity from suit is waived."). We thus overrule Ground Game's first issue.

As to the City's third issue, the UDJA expressly authorizes "further relief based on a declaratory judgment . . . whenever necessary or proper." *See* Tex. Civ. Prac. & Rem. Code § 37.011. Courts have construed the UDJA's limited waiver of immunity to authorize parties to bring claims against a governmental unit for injunctive relief concurrently with claims for declaratory relief. *See Patel*, 469 S.W.3d at 74, 77 (holding that, where plaintiffs sought both declaratory relief and permanent injunction under UDJA barring state agencies and their officials from enforcing alleged unconstitutional statute, sovereign immunity was waived); *City of Killeen v. Oncor Elec. Delivery Co.*, No. 03-23-00063-CV, __ S.W.3d. __, 2025 WL 648521, at *11 (Tex. App.—Austin Feb. 28, 2025, no pet.) (holding that governmental immunity was waived for alleged constitutional violations and that plaintiff could seek declaratory and injunctive relief concurrently); *Hays County v. Hays Cnty. Water Planning P'ship*, 106 S.W.3d 349, 359 (Tex.

12

App.—Austin 2003, no pet.) (holding that UDJA waived County's immunity for Partnership's suit seeking declaratory and injunctive relief based on allegations that commissioner's court acted illegally). Accordingly, the UDJA waives the City's immunity as to appellees' claims for injunctive relief, and we overrule the City's third issue.

### Defective jurat and verification

In its fourth issue, the City contends that appellees' "sole requested relief" in the trial court was injunctive; that appellees failed to verify their pleadings, attempting to verify them solely with a defective jurat; and that, therefore, appellees "failed to establish or invoke jurisdiction." *See* Tex. R. Civ. P. 682 ("No writ of injunction shall be granted unless the applicant therefor shall present his petition to the judge verified by his affidavit and containing a plain and intelligible statement of the grounds for such relief."). However, injunctive relief was not the only relief sought by appellees. Rather, appellees expressly pleaded for declaratory relief in their live petition. With respect to the "defective jurat" and "unverified pleading" argument, the City has not cited any authority determining that an unverified pleading seeking injunctive relief deprives a trial court of jurisdiction, nor have we found any. *Cf. City of Houston v. Carlson*, 393 S.W.3d 350, 356–57 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (determining that provision of Local Government Code authorizing lawsuit to challenge zoning board's decision by filing of verified petition was not jurisdictional requisite); *Reagan v. NPOT Partners I, L.P.*, No. 06-08-00071-CV, 2009 WL 763565, at *2–3 (Tex. App.—Texarkana Mar. 25, 2009, pet. dism'd w.o.j.) (mem. op.) (holding that defective verification of sworn complaint for eviction, required by Rule of Civil Procedure 739, did not deprive trial court of jurisdiction). In other words, even if appellees' pleading is ineffective to support its request for injunctive relief,

13

whether a pleading is verified does not implicate subject-matter jurisdiction. We overrule the City's fourth issue.

## CONCLUSION

Having determined that the trial court did not err in denying appellants' pleas to the jurisdiction, we affirm its order.

_____

Karin Crump, Justice

Before Chief Justice Byrne, Justices Theofanis and Crump

Affirmed

Filed: April 16, 2025

14