TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00023-CV






The Texas Department of Transportation, and Amadeo Saenz, Jr., in his Official Capacity
as Director of Texas Department of Transportation, Appellants


v.


Sunset Transportation, Inc.; MEL Transport, Inc. d/b/a Magnum Transportation; and
Sunset Prosper, Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. D-1-GN-09-001874, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING





O P I N I O N


 The Texas Department of Transportation (TxDOT) and its executive director, in
his official capacity, appeal a district court order denying, in its entirety, their plea to the jurisdiction
over claims asserted by appellees Sunset Transportation, Inc.; MEL Transport, Inc. d/b/a Magnum
Transportation, Inc.; and Sunset Prosper, Inc. (1) In a single issue, appellants assert that appellees'
claims--which were asserted under the Uniform Declaratory Judgments Act (UDJA) and
section 2001.038 of the Administrative Procedure Act (APA)--are each barred by sovereign
immunity. We agree that appellees did not plead facts sufficient to invoke the district court's
jurisdiction under APA section 2001.038. However, we conclude that appellees are entitled to the
opportunity to replead those claims. In light of this holding, moreover, we further conclude that the
district court reached the correct result in denying appellants' plea as to appellees' UDJA claims at
this juncture. For these reasons, we affirm the district court's order.


STANDARD OF REVIEW

 A plea to the jurisdiction challenges a trial court's authority to decide the subject
matter of a specific cause or action. See Texas Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d
217, 225-26 (Tex. 2004). Analysis of whether this authority exists begins with the plaintiff's
live pleadings. Id. at 226. The plaintiff has the initial burden of alleging facts that affirmatively
demonstrate the trial court's jurisdiction to hear the cause. Id. (citing Texas Ass'n of Bus. v. Texas
Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)). Mere unsupported legal conclusions do not
suffice. See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality, 307 S.W.3d
505, 515-16 & n.7 & 8 (Tex. App.--Austin 2010, no pet.). We must also consider evidence the
parties presented below that is relevant to the jurisdictional issues, Bland Indep. Sch. Dist. v. Blue,
34 S.W.3d 547, 555 (Tex. 2000), including evidence that a party has presented to negate the
existence of facts alleged in the plaintiff's pleading. See Miranda, 133 S.W.3d at 227; see also
Combs v. Entertainment Publ'ns, Inc., 292 S.W.3d 712, 719 (Tex. App.--Austin 2009, no pet.)
(summarizing different standards governing evidentiary challenges to the existence of pled
jurisdictional facts where such facts implicate both jurisdiction and the merits versus where they
implicate only jurisdiction). Our ultimate inquiry is whether the plaintiff's pled and un-negated
facts, taken as true, and liberally construed with an eye to the pleader's intent, would affirmatively
demonstrate a claim or claims within the trial court's subject-matter jurisdiction. See Miranda,
133 S.W.3d at 226; Creedmoor-Maha Water Supply Corp., 307 S.W.3d at 513, 516 n.8. This is a
question of law that we review de novo. See Miranda, 133 S.W.3d at 22; Creedmoor-Maha Water
Supply Corp., 307 S.W.3d at 513, 516 n.8.


REGULATORY CONTEXT

 It is undisputed that each appellee is a motor carrier that engages in both interstate
commerce and intrastate commerce within Texas. These facts implicate interrelated state and
federal regulatory regimes that provide the context for appellees' claims and, ultimately, the
jurisdictional issues on appeal. It is thus helpful to begin with a brief review of these laws before
beginning our analysis of the pleadings and jurisdictional evidence.

 In 2005, the United States Congress enacted a law known as the Unified Carrier
Registration Act of 2005 (the UCR Act) creating a "Unified Carrier Registration" (UCR) system
through which a motor carrier operating in interstate or international commerce submits a single
registration fee and pays, through a designated "base state," a "UCR fee" in an amount determined
based on the size of its vehicle fleet. See 49 U.S.C.A. §§ 14504a(a)(2) (West 2007), (f) (West 2007
& Supp. 2011). The system is implemented through an interstate agreement under which individual
states so desiring can opt to participate in collecting UCR fees and in sharing fee revenues. See id.
§§ 14504a(a)(2), (e), (f)(4), (g)-(h) (West 2007). Of chief relevance to this case, however, are
provisions of the UCR Act that prohibit states--regardless of whether they have opted into fee-collection and sharing under the UCR system--from imposing certain additional regulatory burdens
on the interstate motor carriers that would register under the UCR system. Congress determined that
it was an "unreasonable burden upon interstate commerce" for a state or its agencies "to enact,
impose, or enforce any requirement or standards with respect to, or levy any fee or charge on,"
interstate motor carriers in connection with registering their interstate operations with the
state, the filing of information concerning their federally required financial responsibility, or
the filing with the state of the name of their federally required agent for service of process. See id.
§ 14504a(c)(1)(A)-(C) (West 2007 & Supp. 2011). States were further prohibited from requiring
any interstate motor carrier that also had intrastate operations to pay any tax or fee from which a
purely intrastate carrier would be exempt. See id. § 14504a(c)(2) (West Supp. 2011).

 Finally, and most importantly for this case, Congress prohibited states from
"enact[ing], impos[ing], or enforc[ing] any requirement or standards with respect to, or levy and
fee or charge on" motor carriers that conduct both interstate and intrastate business "in connection
with . . . the annual renewal of the intrastate authority, or the insurance filings . . . or other intrastate
filing requirement necessary to operate within the State," if certain conditions are met. See id.
§ 14504a(c)(1)(D) (West 2007). For this prohibition to apply, the motor carrier (1) must have
satisfied certain federal registration requirements and (2) be "in compliance with the laws and
regulations of the State authorizing the carrier to operate in the State in accordance with [49 U.S.C.]
section 14501(c)(2)(A)." See id. Section 14501(c)(2)(A), in turn, provides that general federal
preemption of state regulations "related to a price, route, or service of any [interstate] motor carrier
. . . with respect to the transportation of property" does not: 


restrict the safety regulatory authority of a State with respect to motor vehicles, the
authority of a State to impose highway route controls or limitations based on the size
or weight of the motor vehicle or the hazardous nature of the cargo, or the authority
of the State to regulate motor carriers with regard to minimum amounts of financial
responsibility related to insurance requirements and self-insurance authorization.


Id. § 14501(c)(2)(A) (West 2007). Additionally, section 14504a(c)(1)(D) exempts from preemption
renewals of a motor carrier's intrastate operating authority to transport waste or household goods,
conduct certain bus services, or provide non-consensual towing. See id. § 14504a(c)(1).

 The UCR Act took effect in January 2007, and Texas opted into the UCR system
through legislation effective on September 1 of that year. See generally Tex. Transp. Code Ann.
§§ 645.001-.004 (West 2011) (delegating authority to, among other things, participate, "to the fullest
extent practicable . . . in a federal motor carrier registration program under the unified carrier
registration system . . . ."). At the same time, the Legislature amended the transportation code in an
evident attempt to conform Texas law to the UCR Act's preemption provisions.

 At all relevant times, chapter 643 of the transportation code has generally prohibited
a motor carrier from operating a commercial motor vehicle on a road or highway of this state
unless the carrier registers with the State (specifically, at the dispute's inception, TxDOT's
motor vehicle division (2)) and obtains a registration certificate and, for each vehicle, a "cab card."
See Tex. Transp. Code Ann. §§ 643.051, .054, .059 (West 2011). Such registrations must also
be renewed periodically, generally on an annual basis. See id. § 643.058, .061 (West 2011).
Additionally, motor carriers required to register under chapter 643 must, with respect to each
vehicle requiring registration, maintain liability insurance or financial responsibility in an amount
specified by the agency, which must not exceed the amounts required under federal law. See id.
§§ 643.101(a), (b), .102 (West 2011). Proof of such insurance or financial responsibility must be
filed at the time of initial registration, "at the time of a subsequent registration if the motor carrier
was required to be continuously registered . . . and the carrier failed to maintain continuous
registration," when the carrier changes insurers, and when the carrier changes ownership. Id.
§ 643.103(a) (West 2011); see also id. §§ 643.053(2) (West 2011) (application for initial registration
must be accompanied by proof of insurance or financial responsibility as required by
section 643.103), .058(c)(3) (motor carrier renewing registration must "provid[e] . . . evidence of
continuing insurance or financial responsibility" in required amount). Fees may be assessed
in connection with initial registration, renewal of registration, and insurance filings. See id.
§§ 643.053(1), (3), .057, .058(c)(2), .061(b), .103(c). All of these general requirements have
been implemented through rules, codified at relevant times in title 43, chapter 18 of the
Texas Administrative Code. See generally 43 Tex. Admin. Code §§ 18.2-.76 (2010) (Tex. Dep't of
Transp., Motor Carriers), amended by 34 Tex. Reg. 8286 (2009), adopted 35 Tex. Reg. 664 (2010)
(codified as amended at 43 Tex. Admin. Code §§ 218.1-.77 (Tex. Dep't of Motor Vehicles,
Motor Carriers)).

 In response to the UCR Act, the Legislature amended section 643.002 of the
transportation code to provide simply that "[t]his chapter does not apply" to "motor carrier
operations exempt from registration by the Unified Carrier Registration Act of 2005 (49 U.S.C.
Section 14504a)." See id. § 643.002(1) (West 2011). A few months later, TxDOT likewise
promulgated proposed rule amendments to implement the UCR system and conform to the Act's
preemption provisions. See 32 Tex. Reg. 9923-34 (2007) (to be codified at 43 Tex. Admin. Code
§§ 18.1-.76) (proposed Dec. 28, 2007). The amendments as proposed ultimately took effect on
April 17, 2009. See 32 Tex. Reg. 9923-34 (2007), adopted 33 Tex. Reg. 2978-81 (2008) (codified
at 43 Tex. Admin. Code §§ 18.1-.76). New or amended provisions that are material to this appeal
included a requirement that interstate carriers operating in Texas "register and comply with
provisions of the [UCR] System as required by 49 U.S.C. 14504(a) [sic]," 43 Tex. Admin. Code
§ 18.18(b), an exclusion of "motor vehicle[s] exempt from registration by the Unified Carrier
Registration Act of 2005" from the "commercial motor vehicle[s]" required to be registered with
TxDOT, see id. §§ 18.2(6)(B)(viii), .11(a), and a new subsection titled "Interstate motor carrier
operating in intrastate commerce" that was added to the rule governing expiration and renewals of
state motor carrier registrations:


(1) An interstate motor carrier registered under § 18.18 of this chapter [i.e.,
UCR] is not required to renew a certificate of registration issued under
§ 18.11 of this chapter [the general requirement that motor carriers register
with TxDOT] except when the motor carrier is operating commercial motor
vehicles as a


 (A) charter bus carrier;

 (B) for-hire household goods carrier; or

 (C) recyclable materials or waste carrier.


(2) If a motor carrier that registered under § 18.18 of this chapter [UCR] does not
maintain continuous motor carrier registration under § 18.11 of this chapter,
the motor carrier must file an application under § 18.13 of this chapter [the
general requirements and procedures for original registration as a motor
carrier with TxDOT, including fees and proof of insurance requirements] to
operate on public streets and highways in this state.



Id. § 18.14(c); see id. §§ 18.11, 18.13, 18.15-.16. (3) The rule amendments did not alter preexisting
requirements that motor carriers "file and maintain proof of automobile liability insurance for all
vehicles required to be registered . . . at all times." Id. § 18.16(e)(1)(A); see also id. § 18.16(e)(2)
(requiring proof-of-insurance filing at time of original registration application, on or before
cancellation date of insurance coverage, whenever the motor carrier changes insurers, whenever the
motor carrier changes its name, whenever the motor carrier changes the classification of the cargo
being transported, and when "replacing another active insurance filing").


THE RECORD

 The record in this case consists of appellees' live pleading at the time of the
hearing on appellants' plea to the jurisdiction (4) and evidence presented by appellees both during the
hearing and as exhibits to their response in opposition to appellants' plea. This evidence includes
documentary evidence and both affidavit and live testimony from Erick Smith, an officer with a
company that handles appellees' regulatory filings. Appellants challenged only the sufficiency of
appellees' pleadings; they did not attempt to negate the existence of any pled facts with evidence
nor presented evidence to controvert that presented by appellees. Consequently, we must take as
true appellees' factual allegations and evidence. See Miranda, 133 S.W.3d at 226; Creedmoor-Maha
Water Supply Corp., 307 S.W.3d at 513, 516 n.8.

 Appellees' pleadings and evidence reflect that each entity is a Texas corporation,
with a principal place of business in this state, and the record further indicates that the corporations
are affiliated or related. Each company, moreover, is a motor carrier that operates in Texas in
both interstate and intrastate commerce, and none has operated intrastate within the categories of
intrastate operations that are excluded from the UCR Act's preemption of state registration renewal
requirements, see 49 U.S.C.A. § 14504a(c)(1).

 Before the UCR Act took effect in 2008, according to Smith, appellees had registered
with TxDOT as motor carriers. After UCR went into effect, appellees' pleadings and evidence
indicate, appellees had each registered under the UCR system. The documentary evidence reflects,
and appellees acknowledge, that TxDOT revoked the state registration of Sunset Transportation
during the summer of 2008. However, it is not this revocation that is the immediate focus of
appellees' claims for relief.

 In their pleadings, appellees complain that TxDOT is requiring "UCR registered
interstate motor carriers who also operate[] in intrastate commerce . . . to maintain active insurance
filings with TXDOT at all times, to re-register with TXDOT and to pay applicable fees to the State,
all in contradiction to the UCR Act and the Texas Transportation Code." (5) In appellees' view,
section 643.002 of the transportation code and the UCR create an exemption for and/or preempt
these state registration, insurance, and fee requirements with respect to interstate motor carriers
within UCR's scope. Appellees allege that their business operations are being impeded by being
required to "re-register" with TxDOT, maintain active insurance filings, and pay related fees as a
condition of operating intrastate in Texas, and that TxDOT has been "threatening administrative
penalties and fines" and "harass[ing] the plaintiffs with bogus records requests" in connection with
"registration violations" that are premised on TxDOT's erroneous view of those requirements.
Appellees seek the following declarations:



 "that the [TxDOT] policy of requiring UCR registered interstate motor carriers who may also
operate in intrastate Texas commerce to maintain active insurance filings with [TxDOT] at
all times and/or re-register and submit applicable fees to re-activ[ate] a revoked [TxDOT]
motor carrier certificate of registration, is invalid because it seeks to amend the law as made
and provided by the Legislature through an administrative process," is "an excessive exercise
of the power vested in [TxDOT]," and "goes beyond the statutory authority to regulate
interstate carriers and insurers."


 


 "that [TxDOT] [is] acting beyond [its] statutory authority in requiring insurance filings,
registrations, and fees, for interstate carriers registered under the UCR who may operate in
intrastate commerce."

 that "[TxDOT] [is] preempted by federal law from requiring interstate carriers registered
under the UCR from making insurance filings or renewing intrastate authority."




Appellees additionally seek temporary and permanent injunctive relief restraining appellants "from
requiring insurance filings from interstate motor carriers registered under the UCR, from conducting
investigations of intrastate movements of interstate motor carriers registered under the UCR, and
from issuing violation reports or assessing fines to interstate motor carriers properly registered under
the UCR concerning intrastate movement."

 Appellees purport to assert their claims under the limited waiver of sovereign
immunity provided in the Uniform Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann.
§§ 37.001-.009 (West 2009); see Texas Lottery Comm'n v. First State Bank of DeQueen, 325 S.W.3d
628, 633-34 (Tex. 2010) (recognizing that section 37.006(b) of the UDJA waives the State's
sovereign immunity to the extent of permitting suits for declarations as to the construction or validity
of a state statute), but ultimately must rely upon the "ultra vires" exception to sovereign immunity.
See City of El Paso v. Heinrich, 284 S.W.3d 366, 369-77 (Tex. 2009) (explaining that sovereign or
governmental immunity does not bar suits against governmental officers in their official capacity for
prospective relief to restrain acts outside their discretionary legal authority); Creedmoor-Maha Water
Supply Corp., 307 S.W.3d at 514-16 (recognizing "that an otherwise proper UDJA claim seeking
to construe or invalidate a statute is nonetheless barred by sovereign immunity if the remedy would
have the effect of establishing a right to relief against the State that implicates sovereign immunity
and for which immunity has not been waived," including an ostensible "ultra vires" claim that
actually seeks to control state action). In this regard, appellees allege that TxDOT's executive
director "has acted ultra vires of the applicable laws regarding registration and insurance filings[,]
for which no immunity exists." Appellees also request attorney's fees as the UDJA permits. See
Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

 Appellees additionally invoke section 2001.038 of the APA. APA section 2001.038
waives sovereign immunity to the extent of creating a cause of action for declaratory relief regarding
the "validity" or "applicability" of a "rule" if "it is alleged that the rule or its threatened application
interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the
plaintiff." Tex. Gov't Code Ann. § 2001.038(a) (West 2008); see Texas Logos, L.P. v. Texas Dep't
of Transp., 241 S.W.3d 105, 123 (Tex. App.--Austin 2007, no pet.) ("section 2001.038 is a grant
of original jurisdiction and, moreover, waives sovereign immunity"). As for the TxDOT "rule" that
is under challenge, appellees allege that "in June 2008 TxDOT revised its policy or rules concerning
UCR registered interstate motor carriers who also operated in interstate commerce to require those
carriers to maintain active insurance filings with TXDOT at all times, to re-register with TXDOT
and to pay applicable fees to the State." This allegation refers to a TxDOT document, purportedly
published on the agency's website and in evidence, titled, "Important Notice for UCR Registered
Interstate Motor Carriers Also Operating in Intrastate Texas Commerce," and indicating
"REVISED--JUNE 25, 2008" and "EFFECTIVE IMMEDIATELY."

 This document (hereinafter, the "2008 Revised Notice") states that its "purpose is . . .
to provide instructions to Interstate Motor Carriers who are currently registered under the
Unified Carrier Registration (UCR) Agreement and that also operate in Intrastate Texas Commerce
to convert existing TxDOT Registration to a non-expiring certificate," and that it applied to
"Interstate Motor Carriers also operating in Interstate Texas Commerce" that had a current
U.S. Department of Transportation number, are currently registered under UCR, and whose
intrastate operations did not consist of household goods, charter bus, or waste transportation. (Those
categories of carriers, the document indicated, "must continue to renew TxDOT registration.") The
2008 Revised Notice then provided instructions for "converting," via a website or hard copy and
mail, an existing TxDOT motor carrier certificate of registration to a "UCR/Intrastate certificate" that
"will not expire" as long as the motor carrier remains registered with UCR and its intrastate
operations do not include household goods, charter bus, or waste transportation. Upon conversion,
the document further advised, TxDOT would provide a "new certificate and insurance cab card"
indicating UCR registration. The 2008 Revised Notice additionally indicated that "No fees are
required for activating an expired TxDOT Certificate and the existing TxDOT Number will be
retained." However, at the bottom of the page was printed, in bold:


All motor carriers must maintain active insurance filing with TxDOT at all times.


Motor Carriers are required to re-register and submit applicable fees to re-activate a
revoked TxDOT Motor Carrier Certificate of Registration.



 Appellees contrast the 2008 Revised Notice with an earlier TxDOT document, similar
in form, dated September 10, 2007, and titled, "Important Notice for Motor Carriers" (hereinafter
the "2007 Notice"). The 2007 Notice stated that its "purpose . . . is to inform motor carriers of the
latest requirements associated with the Unified Carrier Registration Act of 2005" and provided a
chart explaining registration and filing requirements applicable to various categories of motor carrier
operations. The chart, in relevant part, instructed that: (1) motor carriers that operated interstate
were required to register with UCR and to comply with the Federal Motor Carrier Safety
Administration (FMCSA) requirements, (2) motor carriers that operated exclusively intrastate were
required to register with TxDOT, (3) interstate carriers that also operated intrastate as charter bus
carriers, non-consent tow-truck carriers, for-hire household goods carriers, or waste carriers
were required to register with both UCR and TxDOT and comply with the FMCSA requirements,
and (4) other interstate carriers that also operated intrastate (e.g., appellees) were required to do the
following:



 Comply with FMCSA requirements (http://www.fmcsa.dot.gov/); AND

 Register with UCR (http://www.ucr.in.gov/).



IMPORTANT NOTE: All first time registrants in this category must also
register with TxDOT as a motor carrier.



 Appellees interpret the 2007 Notice as advising them that, having previously
registered with TxDOT in years past, they were no longer required to comply with any
state registration or insurance requirements or pay related fees, but needed merely to register under
UCR and comply with FMCSA requirements. They assert that this interpretation was "consistent
with the statutory language of the UCR and Chapter 643 of the Texas Transportation Code."
Additionally, Smith testified that as late as the summer of 2008, but sometime before the
2008 Revised Notice, TxDOT had conducted an investigation of Sunset Transportation's registration
and that the individual investigator had concluded that the company was properly registered. (6) By
subsequently changing "its policy and rules" to require "active insurance filings . . . at all times" and
re-registration and fees when state registration certificates are revoked, as reflected in the
2008 Revised Notice, appellees complain that TxDOT acted contrary to section 643.002 of the
transportation code and the UCR Act. (7)


ANALYSIS

 In their plea to the jurisdiction, appellants asserted that sovereign immunity barred
appellees' suit, that APA section 2001.038 did not waive such immunity because appellees had
failed to identify any "rule" that they were challenging, that appellees had not alleged facts that
would invoke the district court's jurisdiction via the "ultra-vires" exception to sovereign immunity,
and that appellees' UDJA claims would be a redundant remedy and mere vehicle for recovering
attorney's fees if it turned out that appellees had invoked the court's jurisdiction through their
APA claim. The district court's order denying the plea did not elaborate on its reasoning, nor were
findings of fact and conclusions of law requested or made. On appeal, appellants bring forward
essentially the same grounds for dismissal on which they relied below.

 To determine whether appellees have asserted a valid ultra vires claim that
invokes the district court's subject-matter jurisdiction, we would construe the provisions of the
transportation code and UCR Act that define the scope of TxDOT's legal authority, apply them to
the facts that appellees have alleged, and ascertain whether those facts constitute acts beyond
TxDOT's legal authority. See Heinrich, 284 S.W.3d at 372-73 (ultra vires suit "must not complain
of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that
the officer acted without legal authority or failed to perform a purely ministerial act"); Creedmoor-Maha Water Supply Corp., 307 S.W.3d at 516 n.8 (quoting Hendee v. Dewhurst, 228 S.W.3d 354,
368-69 (Tex. App.--Austin 2007, pet. denied) (when analyzing whether plaintiff has alleged
ultra vires acts, we construe the relevant statutory or constitutional provisions that define the
governmental actor's discretionary authority, apply the provisions to the pled and un-negated facts,
and determine whether those facts fall within or outside that authority). Appellees emphasize that
they explicitly pled that TxDOT or its executive director acted "ultra vires" or contrary to their
legal authority. However, merely asserting legal conclusions or labeling a defendant's actions as
"ultra vires," "illegal," or "unconstitutional" does not suffice to plead an ultra vires claim--what
matters is whether the facts alleged constitute actions beyond the governmental actor's statutory
authority, properly construed. Creedmoor-Maha Water Supply Corp., 307 S.W.3d at 515-16 & nn.7-8. To this extent, the jurisdictional inquiry with respect to appellees' purported ultra vires claims
would substantially overlap with the claims' merits. Id. at 516 n.8.

 In contrast to appellees' UDJA claims, which are ultimately predicated upon the
ultra vires exception, appellees' claims under APA section 2001.038 invoke the district court's
subject-matter jurisdiction if appellees have challenged the "validity" or "applicability" of a "rule"
under the APA and they allege that "the rule or its threatened application interferes with or
impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't
Code Ann. § 2001.038(a); see Texas Logos, L.P., 241 S.W.3d at 123. Determining whether
appellees have done so, unlike with our analysis of appellees' ultra vires claims, does not require us
to delve into the merits of the claims, see Texas Dep't of Pub. Safety v. Salazar, 304 S.W.3d 896,
903 (Tex. App.--Austin 2009, no pet.)--nor would such an inquiry be proper. See Bland Indep.
Sch. Dist., 34 S.W.3d 547; Hendee, 228 S.W.3d at 366. Consequently, we should begin with
section 2001.038's narrower jurisdictional inquiry.

 Appellees have alleged that the 2008 Revised Notice is invalid because it violates the
limitations on TxDOT's regulatory powers imposed by transportation code section 643.002 and the
UCR Act. These factual allegations suffice to invoke the district court's subject-matter jurisdiction
if the 2008 Revised Notice is a "rule" within the meaning of the APA. See, e.g., Combs v. City of
Webster, 311 S.W.3d 85, 100-01 (Tex. App.--Austin 2009, pet. denied) (recognizing that "[t]o the
extent that no rule as defined by the APA is at issue, section 2001.038 does not provide any basis
for the district court's jurisdiction over appellees' declaratory judgment action"). Appellants argue
that the 2008 Revised Notice is not a "rule" because it merely restates requirements already
prescribed in TxDOT's formally promulgated rules.

 A "rule" under the APA:


(A) means a state agency statement of general applicability that: 

 

 (i) implements, interprets, or prescribes law or policy; or 

 (ii) describes the procedure or practice requirements of a state agency;


(B) includes the amendment or repeal of a prior rule; and 


(C) does not include a statement regarding only the internal management or
organization of a state agency and not affecting private rights or procedures.



Tex. Gov't Code Ann. § 2001.003(6) (West 2008). This definition obviously encompasses
state agency statements formally promulgated in compliance with the APA's notice-and-comment
rulemaking procedures, see id. §§ 2001.021-.036 (West 2008), but it extends beyond these. See, e.g.,
El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n, 247 S.W.3d 709, 714-15 (Tex. 2008)
(holding that agency rate-calculation procedure, ostensibly an "interpretation" of its formally
promulgated rules, was itself a "rule" that was invalid because adopted without complying
with APA's notice-and-comment procedures). Under certain circumstances, this Court has held
that agency pronouncements that advise third parties regarding applicable legal requirements, as
did the 2008 Revised Notice, may be "interpretations" of law that constitute "rules" under the APA.
See Entertainment Publ'ns, Inc., 292 S.W.3d at 720-22; Texas Alcoholic Beverage Comm'n
v. Amusement & Music Operators of Tex., 997 S.W.2d 651, 657-58 (Tex. App.--Austin 1999,
pet. dism'd w.o.j.); see also First Fed. Sav. & Loan Ass'n v. Vandygriff, 639 S.W.2d 492, 498-99 (Tex. App.--Austin 1982, writ dism'd w.o.j.). Precisely when those circumstances exist has
sometimes been difficult to discern under the relevant case law. (8) One thing that can be said with
relative certainty, however, is that an informal agency statement that does no more than restate its
own formally promulgated rules would not in itself be a "rule."

 That a "rule" must be more than a restatement of a formally promulgated rule is
implicit in the APA's requirement that a "rule" have some legal effect on private persons and not
merely impact the "internal management or organization of a state agency." Tex. Gov't Code Ann.
§ 2001.003(6)(C). Recognizing this, we have consistently held that an agency statement interpreting
law must bind the agency or otherwise represent its authoritative position in matters that impact
personal rights. See Salazar, 304 S.W.3d at 905 ("[a]gency statements that 'have no effect on private
persons' are not considered rules") (quoting Brinkley v. Texas Lottery Comm'n, 986 S.W.2d 764,
770 (Tex. App.--Austin 1999, no pet.)); Entertainment Publ'ns, Inc., 292 S.W.3d at 722
(emphasizing that legal interpretation in Comptroller's letters would bind agency employees and
"unambiguously express[ed] an intent to apply this interpretation . . . in all future cases" involving
similar facts); Amusement & Music Operators of Tex., 997 S.W.2d at 658 (agency memoranda to its
law enforcement agents held to constitute "rules" on that record where there was evidence that agents
"not only intend to enforce, but have enforced administrative sanctions" in accordance with
memoranda); see Brinkley, 986 S.W.2d at 770 (observing that agency advisory opinion regarding
applicable law would have no legal effect "absent a statute that so provides or some attempt by the
agency to enforce its statement against a private person"). An agency statement that merely restated
a formally promulgated rule would not meet this test because it would be the underlying rule, not the
agency's restatement of it, that had legal effect. This Court has previously concluded as much. See
Texas Mut. Ins. Co. v. Vista Cmty. Med. Ctr., L.L.P., 275 S.W.3d 538, 556 (Tex. App.--Austin
2008, no pet.) ("The 2005 Staff Report did not affect private rights because it did not change or
amend" a formally promulgated rule).

 This conclusion is also consistent with the second element of the APA's
"rule" definition, which provides that a "rule" "includes the amendment or repeal of a prior rule."
Tex. Gov't Code Ann. § 2001.003(6)(B). Although "includes" is a term of enlargement rather than
exclusion or limitation, (9) such that not all "rules" amend or repeal other rules, this indicia of a "rule"
is nonetheless illustrative of the types of agency actions that would have legal effect on private
persons, as contemplated by the third element. Agency statements that merely restated rules would
have no such effect, and would not themselves be "rules."

 Although distinguishing a mere restatement of a formally promulgated rule from a
statement that is itself a "rule" might prove more elusive in other circumstances, see Vista Cmty.
Med. Ctr., L.L.P., 275 S.W.3d at 555-56, its application is straightforward in this case. Appellees
complain of the portion of the 2008 Revised Notice stating that motor carriers whose
state registrations have been revoked "are required to re-register and submit applicable fees."
This statement tracks TxDOT's rule providing that "[i]f a motor carrier that registered under § 18.18
of this chapter [UCR] does not maintain continuous motor carrier registration under § 18.11 of
this chapter, the motor carrier must file an application under § 18.13 of this chapter to operate
on public streets and highways in this state." 43 Tex. Admin. Code § 18.14(c); see id. § 18.13
(registration requirements, including applicable fees and proof of financial responsibility); see also
id. §§ 218.14(c)(2), .13. Appellees also complain about the notice's statement that "All motor
carriers must maintain active insurance filing with TxDOT at all times." This statement,
likewise, tracks TxDOT's rules. See 43 Tex. Admin. Code § 18.16(e)(1)(A) (motor carriers must
"file and maintain proof of automobile liability insurance for all vehicles required to be registered
. . . at all times"); see also id. § 218.16(e)(1)(A). We agree with appellants that the 2008 Revised
Notice merely restates TxDOT's formally promulgated rules and, thus, is not itself a "rule" under
the APA. Because appellees have alleged only this "rule" as the basis for their claims under
APA section 2001.038, they have failed to invoke the district court's subject-matter jurisdiction
through that statute. See City of Webster, 311 S.W.3d at 100-01.

 On the other hand, the foregoing analysis also reveals that appellees' claims
necessarily implicate the substantive validity of the underlying formally promulgated TxDOT rules,
or, alternatively, the applicability of the underlying rules in light of the rules' exclusion of
"motor vehicle[s] exempt from registration by the Unified Carrier Registration Act of 2005" from
the "commercial motor vehicle[s]" required to be registered with TxDOT. The Texas Supreme
Court has instructed us that if a claimant's pleadings omit sufficient facts to affirmatively
demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in
jurisdiction, the issue is one of "pleading sufficiency, and the plaintiffs should be afforded
the opportunity to amend." Miranda, 133 S.W.3d at 226-27. This is such a case. The substance of
appellees' claims seek declarations regarding the validity or applicability of TxDOT's formally
promulgated rules. APA section 2001.038 confers subject-matter jurisdiction on the district court
to determine such claims. To cure the existing jurisdictional defect, appellees need only add
allegations to the effect that the "rule" or "rules" they are challenging are TxDOT's formally
promulgated rules instead of the 2008 Revised Notice. Accordingly, we will, at this juncture, affirm
the district court's order denying appellants' plea to the jurisdiction as to appellees' section 2001.038
claims without prejudice to appellants re-urging their plea once appellees have had a reasonable
opportunity to amend their pleadings to cure the jurisdictional defect. (10)

 Assuming that appellees replead under section 2001.038, we agree with appellants
that appellees' UDJA claims would be redundant remedies to the extent they complain about
TxDOT's imposition of requirements related to insurance or re-registration for motor carriers
whose prior registration has been revoked. In that event, appellees' UDJA claims regarding those
requirements would be subject to dismissal. See Texas Mun. Power Agency v. Public Util. Comm'n,
253 S.W.3d 184, 200 (Tex. 2007) (declaratory-judgment action will not be entertained if another
pending action between the same parties may adjudicate the same issue); Strayhorn v. Raytheon
E-Sys., Inc., 101 S.W.3d 558, 572 (Tex. App.--Austin 2003, pet. denied); Young Chevrolet, Inc.
v. Texas Motor Vehicle Bd., 974 S.W.2d 906, 911 (Tex. App.--Austin 1998, pet. denied);
Ben Robinson Co. v. Texas Workers' Comp. Comm'n, 934 S.W.2d 149, 153 (Tex. App.--Austin
1996, writ denied). But this repleading has not occurred yet, and we conclude that the district court
reached the correct result in declining to dismiss appellees' UDJA claims at this juncture, pending
appellees' opportunity to replead their section 2001.038 claims. Although appellants urge us to
proceed with an analysis of whether appellees have alleged ultra vires acts, at the present time it is
unnecessary and would be premature for us to reach these questions, which would effectively decide
the merits of appellees' putative section 2001.038 claims. See Salazar, 304 S.W.3d at 903; see also
Bland Indep. Sch. Dist., 34 S.W.3d 547; Hendee, 228 S.W.3d at 366.

 However, appellees' UDJA claims are also predicated upon alleged TxDOT actions
beyond those that are the subject of their section 2001.038 claims. Liberally construing appellees'
factual allegations, as we must do, see Miranda, 133 S.W.3d at 226, they claim that TxDOT is
requiring motor carriers that have already validly registered with it and whose registrations have not
been revoked to re-register, pay related fees, and also submit annual filings of proof of financial
responsibility. Such conduct would run afoul of the UCR Act and, thus, transportation code
section 643.002. (11) Consequently, these allegations would invoke the district court's subject-matter
jurisdiction under the ultra vires exception to sovereign immunity. See Heinrich, 284 S.W.3d at 372-73. The district court did not err in denying appellees' plea as to these claims. 


CONCLUSION

 For the reasons we have explained, we affirm the district court's order denying
appellants' plea to the jurisdiction. 



 __________________________________________

 Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 19, 2011
1. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008).
2. See infra note 5. 
3. TxDOT also added a statement to the preamble of its registration rules recognizing that
transportation code chapter 643 prohibits motor carriers from operating commercial motor vehicles
on a Texas road or highway "unless the carrier registers with the department or is exempt from
registration under Transportation Code §643.002." 32 Tex. Reg. 9923, 9927 (codified at 43 Tex.
Admin. Code § 18.10) (emphasis added).
4. Their third amended original petition.
5. After appellees filed suit but before the hearing on appellants' plea to the jurisdiction, the
state functions implicated by appellees' allegations were transferred from TxDOT to the newly
created Texas Department of Motor Vehicles (DMV). See Act of May 23, 2009, 81st Leg., R.S.,
ch. 933, §§1.01-11.01, 2009 Tex. Gen. Laws 2485-522; see also 34 Tex. Reg. 8286 (2009), adopted
35 Tex. Reg. 664 (2010) (codified at 43 Tex. Admin. Code §§ 218.1-.77) (DMV rules that generally
track the TxDOT motor carrier registration rules discussed herein). The Legislature provided
that, effective November 1, 2009, "all powers, duties, obligations, and rights of action of the
Motor Vehicle Division . . . of the Texas Department of Transportation are transferred to the
Texas Department of Motor Vehicles" and that "the Texas Department of Motor Vehicles shall
continue in any proceeding involving the Motor Vehicle Division, the Vehicle Titles and
Registration Division, or the portion of the Motor Carrier Division . . . that was brought before the
effective date of this act in accordance with the law in effect on the date the proceeding was brought,
and the former law is continued in effect for that purpose." Act of May 23, 2009, 81st Leg., R.S.,
ch. 933, §§ 6.01(a), (d), 2009 Tex. Gen. Laws 2519-20.

 

 Although the DMV and its executive director would appear, as a formal matter, to have
succeeded to the interests of TxDOT and its executive director in this litigation, the Attorney General
continued to prosecute the plea to the jurisdiction in the names of TxDOT and its executive director,
the district court's order refers only to these defendants, and the Attorney General has pursued this
appeal solely in their names. In an apparent abundance of caution, appellees joined the DMV as
an additional defendant, alleging that the new agency has continued to interpret and enforce the
state registration and filing requirements in the same manner TxDOT had. Neither side contends that
the distinction between the predecessors and successors has any substantive implications for this
appeal. For this reason, and because the events giving rise to the underlying dispute involved actions
by TxDOT, we have, for clarity, continued to identify the relevant state actors as TxDOT and its
executive director, as the parties have, and similarly cite to the versions of relevant rules that
referenced TxDOT rather than the DMV.
6. Smith also claimed that the TxDOT investigator furnished the company with a copy of the
2007 Notice at the time.
7. Appellees also suggest that TxDOT was targeting them specifically when it issued the
2008 Revised Notice, and there does appear to be some correlation between the dates of the
investigation and when the notice issued.
8. See, e.g., Ron Beal, Substantive and Interpretive Rules: The Judiciary Continues to
Struggle to Define Them and to Determine Their Legal Validity and Effect, 12 Tex. Tech Admin.
L.J. 55, 59-66 (2010). 
9. Tex. Gov't Code Ann. § 311.005(13) (West 2005) ( "'[i]ncludes' and 'including' are terms
of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create
a presumption that components not expressed are excluded"). 
10. To the extent appellees' complaints regarding the 2007 Notice are intended to sound in
estoppel, appellees will likewise have the opportunity to replead any facts they can assert in
good faith to meet the high burden for such a claim. See City of White Settlement v. Super Wash,
Inc., 198 S.W.3d 770, 774-75 (Tex. 2006). 
11. See 49 U.S.C.A. § 14504a(a)(9), (d) (West 2007). The entity that administers the
UCR system, a joint state-industry body known as the UCR Plan Board of Directors, has
published "informal guidance" explaining the relationship between section § 14504a(c)(1) and
section 14501(c)(2)(A) as follows: 



 A state shall not "[r]equire an interstate motor carrier . . . of property, to renew or charge a
fee to renew its intrastate authority or insurance filings or any other filings required of an
intrastate carrier," except with regard to carriers that transport waste or household goods,
certain bus operations, and non-consensual towing. Unified Carrier Registration Plan Board
of Directors, The Unified Carrier Registration Act of 2005 Informal Guidance for Interested
Parties, available at 
http://www.wutc.wa.gov/webimage.nsf/0/421868d1f06cf30888257361005ffbe4/$FILE/ATT70RBR/UCR%20Questions%20and%20Answer%20Document%201-30-08.pdf (emphasis
in original).

 A state may, however, "[r]equire an interstate carrier to complete the application
requirements, including the fees and proof of insurance coverage, for an initial application
for interstate operating authority." Id. (emphasis in original). 

 The UCR Act "has taken . . . away from the States" enforcement of financial responsibility
laws with regard to filing proof of financial responsibility." "However, a State may enforce
its laws requiring liability coverage for any vehicle operating on the State's public ways. In
other words, if an interstate motor carrier is found to be operating on a State's highways
without liability insurance coverage, the State may take an action against that motor carrier." 
Id. at 11.

 A state may not require "an annual insurance or surety bond filing by an interstate motor
carrier that is operating under an intrastate authority from the State." That is, "[a] State may
require the insurance of surety bond filing as part of the initial issuance of the intrastate
authority, but under § 14504a, not annually thereafter. A State may require the insurance
company or surety company providing such coverage to notify the State whenever the
coverage is cancelled or not renewed. Additionally, nothing in the UCR Act prohibits a State
from verifying the coverage as part of its internal review process of intrastate motor carriers." 
Id.