# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00478-CV

**Texas Department of Public Safety; Steve McGraw, in his Official Capacity as Director of the Texas Department of Public Safety; the Public Safety Commission; Cynthia Leon, in her Official Capacity as Chair of the Public Safety Commission; and Carin Marcy Barth, Ada Brown, Allan B. Polunsky, and Randy Watson, in their Official Capacities as Members of the Public Safety Commission, Appellants[1]**

**v.**

**Miguel Salazar; Edgar Soria; Francisco Avila Trejo; Green Meadows Landscaping, Inc.; Merida Flores; Nader Dalo; Godofredo A. Orellana; and Ruwaidha Liwaza, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-09-000273, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Miguel Salazar; Edgar Soria; Francisco Avila Trejo; Green Meadows Landscaping, Inc.; Merida Flores; Nader Dalo; Godofredo A. Orellana; and Ruwaidha Liwaza filed suit against the Texas Department of Public Safety; Steve McGraw, in his Official Capacity as Director of the Texas Department of Public Safety; the Public Safety Commission; Cynthia Leon, in her Official Capacity as chair of the Public Safety Commission; and Carin Marcy Barth, Ada Brown, Allan B. Polunsky, and Randy Watson, in their Official Capacities as members of the Public Safety

---

[1] As originally filed, the style of this case reflected that Allan Polunsky was the chair of the Public Safety Commission (the "Commission") and that John Steen and A. Cynthia Leon were members of the Commission. In this opinion, we have substituted the current chair and members of the Commission.

Commission. For ease of reading, we will refer to the plaintiffs in the underlying suit as the Applicants and to the defendants as the Department except where it is necessary to refer to the parties individually. In their suit, the Applicants sought relief under the Administrative Procedure Act as well as declaratory relief under the Uniform Declaratory Judgment Act. In addition, the Applicants sought an award of attorney's fees as part of their declaratory claims. Ultimately, the district court granted the relief requested by the Applicants, and the Department appeals the district court's judgment. We will vacate the district court's judgment and dismiss the cause.

## BACKGROUND AND GOVERNING SCHEME

This appeal has a long appellate history with this Court. Before delving into the facts of the current appeal, it is helpful to provide some context for the issues on appeal by giving a brief discussion regarding the history of the case as well as the various statutes and rules bearing upon the issues in this case. The legislature empowered the Department with the authority to adopt rules necessary to the issuance of driver's licenses and personal identification certificates.[2] *See* Tex. Transp. Code §§ 521.005, .291. In addition, the legislature set out certain criteria for driver's license applications and mandated that applications "include any other information the department requires to determine the applicant's identity, residency, competency, and eligibility." *Id.* § 521.142(e); *see also id.* § 521.142(a) (specifying that applicant must provide full name and place of birth and requiring information to be "verified by presentation of proof of identity satisfactory to the department").

---

[2] The claims and governing framework for the underlying suit address personal identification certificates and driver's licenses. In our opinion, we will generally refer to the two types of identification as driver's licenses.

2

In light of the statutory directives discussed above, the Department promulgated Rule 15.24. That rule lists the types of documents "that may be presented to establish proof of identity." *See* 37 Tex. Admin. Code § 15.24 (Texas Dep't of Pub. Safety, Identification of Applicants). At the time relevant to the conflict in this case, former Rule 15.24 provided that one type of document that may be used as proof of identity is an "unexpired United States Bureau of Citizenship and Immigration Services document issued for a period of at least one year" but also required that the document "be valid for no less than six (6) months from the date presented to the [D]epartment with a completed application." 33 Tex. Reg. 2011 (2008), *adopted* 33 Tex. Reg. 4008 (2008), *amended by* 36 Tex. Reg. 6871 (2011), *adopted* 36 Tex. Reg. 8383 (2011) (current version at 37 Tex. Admin. Code § 15.24).

In addition to the above rule, the Department also promulgated former Rule 15.171, which governed the issuance of driver's licenses to non-citizens. 33 Tex. Reg. 5271 (2008), *adopted* 33 Tex. Reg. 8032 (2008), *repealed by* 36 Tex. Reg. 6872 (2011), *adopted* 36 Tex. Reg. 8384 (2011) (former 37 Tex. Admin. Code § 15.171 (Texas Dep't of Pub. Safety, Issuance of Driver Licenses and Identification Certificates to Non-citizens)). At the time relevant to the conflict in this appeal, former Rule 15.171 provided that an applicant could not be issued a driver's license if he had less than six months remaining on his admission to the United States. *Id.* Further, the rule explained that if an applicant's period of lawful admission is more than six months but less than the full term for a driver's license, he may only be given a driver's license "with a status date displayed that coincides with the expiration of the applicant's lawful admission period in the United States." *Id.* Moreover, the rule stated that if an applicant's period of lawful admission has an indefinite end date, he may be issued a driver's license with a one-year status date from the date of the application and that if he

3

is unable to provide valid documentation of a change or extension within 45 days from the status date, his license will be cancelled. *Id.*

In addition to the promulgated rules discussed above, the Department also issued an internal memo explaining that driver's licenses issued to certain non-citizens will differ from standard driver's licenses by being oriented vertically and by bearing the phrase "Temporary Visitor." Furthermore, the memo directed that the modified licenses show the individual's status date.

After the rules and memo discussed above became effective, Miguel Salazar, Edgar Soria, Francisco Avila Trejo, and Green Meadows Landscaping, Inc.,[3] filed suit against the Department seeking declaratory and injunctive relief under the Declaratory Judgment Act, *see* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011, and under the provision of the Administrative Procedure Act allowing individuals to challenge the validity of an administrative rule, *see* Tex. Gov't Code § 2001.038. In their suit, they argued that "the enforcement of Rules 15.24 and . . . 15.171 and the Department's policies as outlined in the memorandum would cause them probable injury." *Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 902 (Tex. App.—Austin 2009, no pet.). In particular, "Salazar, Soria, and Trejo assert[ed] that they [we]re authorized workers under the federal H-2B[4] work visa program, but [could not] obtain driver's licenses under the new rules

---

[3] Eustolio Galvan and Jose Gomez were also listed as plaintiffs in the suit, but this Court later dismissed those plaintiffs for lack of standing. *Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 907-08 (Tex. App.—Austin 2009, no pet.).

[4] The H-2B program is a federal program allowing employers to seek permission from the federal government to hire temporary workers from other countries if the job positions cannot be filled with individuals in the United States. *See* 8 U.S.C.A. § 1101(a)(15)(H)(ii)(b); *see also Rayas v. Texas Mut. Ins. Co.*, No. 03-11-00310-CV, 2013 Tex. App. LEXIS 298, at *3 n.1 (Tex. App.—Austin Jan. 11, 2013, no pet.) (mem. op.) (explaining that "H-2B program allows U.S. employers to bring foreign nationals to the U.S. to fill temporary non-agricultural jobs").

4

because their visas are only valid for ten months at a time." *Id.* at 902. In addition, Green Meadows, which is a landscaping business that relies on temporary employees, "allege[d] that the Department's new rules . . . prevented its H-2B workers from obtaining Texas driver's licenses, and therefore precluded Green Meadows from employing them as foremen, as that position requires the ability to drive work crews from one job site to another." *Id.* After convening a hearing, the district court granted the requested injunctive relief, and the Department appealed the district court's determination arguing that the district court did not have jurisdiction over the claims. *Id.*

On appeal, this Court determined that although "there is no doubt that Rules 15.24 and 15.171 are agency rules," the memo requiring that driver's licenses for non-citizens be oriented vertically and have the phrase "Temporary Visitor" at the top did not qualify as a rule under the Administrative Procedure Act. *Id.* at 905. Accordingly, this Court determined that the district court did not have jurisdiction to consider the plaintiffs' challenge to the memo under section 2001.038 of the Administrative Procedure Act. *Id.* In reaching this result, we explained that "[t]he Department's internal policy regarding the appearance of driver's licenses as outlined in the memorandum does not affect the interest of the public such that it cannot be altered without public input, nor does it have any legal effect on private persons." *Id.* Stated differently, we related that the plaintiffs did not identify "any public interest in ensuring that all qualified applicants receive a horizontally oriented driver's license or a driver's license free from any 'Temporary Visitor' designation" or identify "any legal effect on private persons as a result of the Department's policy." *Id.*

Turning to the plaintiffs' challenge to the memo under the Declaratory Judgment Act, this Court determined that the plaintiffs did not have standing to pursue the claim. *Id.* at 906.

5

In reaching this result, we explained that to establish standing under the Act, a party must show "'a particularized, legally protected interest that is actually or imminently affected by the alleged harm.'" *Id.* (quoting *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 882 (Tex. App.—Austin 2010, pet. denied)). In light of that proposition, we reaffirmed our previous determination that the plaintiffs had "not alleged any cognizable effect on private persons as a result of the Department's September 2008 memorandum, as it merely alters the appearance of certain driver's licenses," and that the plaintiffs failed to show that receiving a license that is standard in appearance "is a recognizable legally protected interest." *Id.*

Regarding the challenges to former Rule 15.24 and former Rule 15.171 under the Administrative Procedure Act, this Court determined that the plaintiffs had standing to pursue these claims and that, therefore, the district court had jurisdiction over those claims. *Id.* at 907-08.[5] Under the provision of the Act authorizing rule challenges, a party must "allege[] that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege." Tex. Gov't Code § 2001.038(a). In determining whether the plaintiffs had standing, we noted that a driver's license is a privilege. *Salazar*, 304 S.W.3d at 906 (citing *Texas Dep't of Pub. Safety v. Schaejbe*, 687 S.W.2d 727, 728 (Tex. 1985)). Further, we explained that Salazar, Soria, and Trejo "demonstrated that the new rules interfere with their privilege to obtain a Texas driver's license" because the new rules require "a non-citizen's immigration documentation . . . [to]

---

[5] In reaching our decision, we dismissed on jurisdictional grounds the plaintiffs' challenges to former Rule 15.24 and former Rule 15.171 under the Declaratory Judgment Act. *Salazar*, 304 S.W.3d at 906 n.7. In dismissing those claims, we noted that parties are not authorized to "seek relief under the [Declaratory Judgment Act] when such relief would be redundant to relief under the" Administrative Procedure Act. *Id.*

6

have been originally issued for a period of at least one year" but that the visas issued under the federal H-2B program have an effective "period of approximately ten months." *Id.* Regarding Green Meadows, we explained that it alleged that it "relies on H-2B workers in conducting its landscaping business," that the rules prevent H-2B workers from obtaining driver's licenses, that it cannot employ workers without driver's licenses as foremen because the job requires them to drive to various job sites, and that "the resulting shortage of foremen has prevented it from fulfilling obligations to its landscaping customers." *Id.* at 907. Further, we noted that "[t]he ability of an employer to participate in federal guest-worker programs, such as the H-2B program, is a privilege created by federal law" and that Green Meadows "alleged that the Department's new rules threaten to impair this privilege" and, therefore, "established standing to challenge the new rules under the" Administrative Procedure Act. *Id.*

Ultimately, this Court determined that the district court had jurisdiction over the challenges to former Rule 15.24 and former Rule 15.171 under section 2001.038 of the Administrative Procedure Act but "dismissed for want of jurisdiction" the challenges to the 2008 memo under both the Administrative Procedure Act and the Declaratory Judgment Act and all other "claims raised pursuant to the" Declaratory Judgment Act. *Id.* at 908, 910.[6]

---

[6] Subsequent to our ruling, the Department filed another interlocutory appeal contending that the district court had implicitly denied its plea to the jurisdiction. *Texas Dep't of Pub. Safety v. Salazar*, No. 03-11-00206-CV, 2011 Tex. App. LEXIS 2921 (Tex. App.—Austin Apr. 19, 2011, no pet.) (mem. op. on reh'g). However, this Court determined that we did not have jurisdiction over the appeal because the district court's order did not actually deny the plea as required by the provision of the civil practice and remedies code governing interlocutory appeals. *Id.* at *2-3. After our determination, the Department filed a petition for writ of mandamus asserting that the district court abused its discretion by failing to rule on the plea, but we denied the petition. *In re Texas Dep't of Pub. Safety*, No. 03-11-00208-CV, 2011 Tex. App. LEXIS 3092, at *1 (Tex. App.—Austin Apr. 21, 2011, orig. proceeding).

After our ruling, Merida Flores, Nader Dalo, Godofredo A. Orellana, and Ruwaidha Liwaza were added to the suit, and the Applicants filed an amended petition for declaratory and injunctive relief. In their amended petition, the Applicants again pursued claims under the Administrative Procedure Act and under the Declaratory Judgment Act. Regarding their administrative claims, the Applicants challenged the "validity and applicability of Rules 15.24 and 15.171." Moreover, the Applicants asserted that the Department had improperly implemented policies that altered "the appearance of licenses for nonimmigrants." In particular, the Applicants contended that the Department's policies interfered with their ability to "receive a license that does not differ in appearance from standard licenses" and that the altered appearance has led to deleterious effects.

Regarding their declaratory claims, the Applicants repeated the same arguments made in the pleading that was the subject of the prior appeal and alleged that their rights pertaining to driver's licenses had been affected. Further, the Applicants added the following declaratory requests in their amended petition: (1) that the Transportation Code does not authorize the Department to deny a driver's license "or to adopt rules or implement policies providing for a denial of a driver's license . . . based on the length of time" that an applicant was authorized to reside in the United States; (2) that the Transportation Code does not authorize the Department to deny a driver's license "or to adopt rules or implement policies providing for a denial of a driver's license . . . based on the length of time remaining before expiration of the applicant's authorization to remain in the United States"; (3) that the Transportation Code does not empower the Department "to limit, or to adopt rules or implement policies that would limit, the duration of such licenses . . . to a period less than the standard duration"; (4) that the Transportation Code does not allow the Department "to

8

limit, or to adopt rules or implement policies that would limit, the duration of a license to the time remaining before expiration of the applicant's current authorization to reside in the United States"; and (5) that the Transportation Code does not authorize the Department to issue to individuals "lawfully residing" in the United States driver's licenses "that differ in appearance from standard driver's licenses."

In a subsequently filed motion for summary judgment, the Applicants requested an additional declaration that was not included in their petition. Essentially, the Applicants asserted that the Department was requiring certain individuals to submit immigration documentation that was not legally required. Accordingly, the Applicants asked the district court to declare that the Department does not have the authority to require applicants to submit additional immigration documents beyond what the federal government issues to applicants seeking indefinite residency.

After reviewing the filings by both sides and after convening numerous hearings, the district court issued its judgment. In its judgment, the district court granted relief under the Administrative Procedure Act and the Declaratory Judgment Act. Regarding the administrative relief, the court declared that former Rule 15.171 was invalid and that portions of former Rule 15.24 were also invalid. Specifically, the district court decreed the following:

> (a) The portion of 37 Texas Administrative Code § 15.24(l)(D) that reads "issued for a period of at least one year and must be valid for no less than six (6) months from the date presented to the department with a completed application" and the portion of § 15.24(l)(F) that reads "marked valid for a fixed duration. The Form I-94 must have been issued for a period of at least one year and must be valid for no less than six (6) months from the date presented to the department with a completed application" and § 15.171 are invalid due to a lack of Texas Transportation Code or other statutory authority to adopt such provisions;

9

(b) The portion of 37 Texas Administrative Code § 15.24(1)(D) that reads "issued for a period of at least one year and must be valid for no less than six (6) months from the date presented to the department with a completed application" and § 15.171 are invalid for lack of the adequate reasoned justification required by Texas Gov't Code § 2001.033(a); and

(c) applied according to their texts, 37 Texas Administrative Code § 15.171 and 37 Texas Administrative Code §§ 15.24(1)(D) and (F) do not authorize or require the DPS to issue, or the individual Defendants to require, direct or authorize DPS to issue, to lawfully admitted persons residing in Texas class C Texas driver's licenses that are oriented vertically and labeled "Temporary Visitor," or that are otherwise different in appearance (except for the requirement that such licenses contain a status date) from the standard class C Texas driver's license.

Turning to the claims under the Declaratory Judgment Act, the district court concluded that it had jurisdiction over those claims, that the Applicants had standing to pursue those claims, that those claims were not moot or redundant of the Applicants' administrative claims, that those claims are "proper *ultra vires* claims concerning what the Transportation Code does and does not authorize [the Department Officials] to impose on lawfully admitted persons seeking Texas driver's licenses." Further, the district court issued the following declarations against the Department officials specifying that the Transportation Code does not authorize the Department:

(a) to deny an application for a class C Texas driver's license based on either (i) the length of time the applicant was originally lawfully admitted to the United States by federal authorities, or (ii) the time remaining before the applicant's permission to remain in the United States expires;

(b) to issue class C Texas driver's licenses that are oriented vertically, labeled "Temporary Visitor," or otherwise not standard in appearance (except as specifically provided in the Transportation Code, e.g., Chapter 521, Subchapter F, pertaining to provisional licenses or licenses for persons under the age of 21), or that are limited in duration to a period less than that specified in Transportation Code § 521.271, to (i) refugees and asylees residing in Texas; and (ii) other lawfully admitted persons residing in Texas; or

10

(c) to require lawfully admitted persons residing in Texas and seeking a class C Texas driver's license to present immigration documents that the United States authorities do not require such persons to have.

In addition, the district court awarded the Applicants attorney's fees under the Declaratory Judgment Act. Specifically, the district court awarded $148,525.00 for services and fees incurred during the trial as well as appellate attorney's fees in the event that the Applicants pursued appeals to this Court or to the supreme court.

The Department appeals the district court's judgment.

## DISCUSSION

In several issues on appeal, the Department raises various jurisdictional and non-jurisdictional challenges to the district court's judgment. First, the Department asserts that the district court did not have jurisdiction over the Applicants' declaratory-judgment claims. Second, the Department insists that the district court erred by failing to strike a declaratory claim that was untimely added. Third, the Department argues that several of the Applicants lacked standing to pursue their claims or that their claims were moot. Fourth, the Department contends that because the district court did not have jurisdiction over the claims under the Declaratory Judgment Act, it erred by awarding the Applicants attorney's fees under that Act. Fifth, the Department urges that the Applicants' rule challenges under the Administrative Procedure Act and their claims under the Declaratory Judgment Act have been mooted by statutory amendments made by the legislature and by the promulgation of new rules by the Department. Finally, the Department insists that the attorney's fees award was "inequitable and unjust." For ease of reading, we will address the Department's fifth issue first and then address the remaining issues in the order briefed.

11

**Subsequent Legal Changes**

In its fifth issue, the Department insists that the entire case has been mooted by amendments to the Transportation Code that went into effect after the district court issued its judgment as well as the Department's decision to amend portions of former Rule 15.24 and to repeal former Rule 15.171. Accordingly, the Department insists that we should vacate the district court's judgment in its entirety. *See Marshall v. Housing Auth. of San Antonio*, 198 S.W.3d 782, 788-89 (Tex. 2006) (explaining need to vacate underlying judgment if case becomes moot during appeal).

As discussed above, in the administrative portion of their pleadings, the Applicants challenged former Rule 15.171, which placed limitations on the duration of licenses, and the portions of former Rule 15.24 imposing additional requirements and duration limits on licenses issued to certain non-citizens. After the district court issued its judgment, former Rule 15.171 was repealed, and the challenged portions of former Rule 15.24 were removed. Moreover, the changes to the two rules were made in response to statutory amendments to the Transportation Code provisions governing the issuance of licenses. Among other things, those changes require that all licenses have the same format, appearance, and orientation, *see* Tex. Transp. Code §§ 521.101(k), .121(e); prohibit the Department from denying a personal identification certificate on the basis of "the duration of the person's authorized stay in the United States," *id.* §§ 521.101(d-1), (f-2), (f-4); and specify that the expiration date for driver's licenses is the same regardless of whether the license was issued to a "citizen, national, or legal permanent resident . . . or a refugee or asylee lawfully admitted," *id.* § 521.271(a); *see also id.* § 521.271(a-2) (governing expiration dates for temporary lawful residents).

On appeal, the Applicants do not seem to dispute the Department's assertion that their administrative claims are moot, and in light of the statutory amendments and rule changes, we must

12

conclude that the Applicants' administrative challenges to former Rules 15.171 and 15.24 are indeed moot. *Cf. Texas Parks & Wildlife Dep't v. Texas Ass'n of Bass Clubs*, 622 S.W.2d 594, 596 (Tex. App.—Austin 1981, writ ref'd. n.r.e.) (explaining that legislation enacted after trial mooted rule challenge because new statute explicitly authorized behavior in question).

The Applicants do, however, argue that their declaratory claims are not moot for various reasons. For example, the Applicants contend that the Department declined to issue standard licenses to several of the Applicants even after allegedly announcing that it would change its policies. In addition, the Applicants claim that their declaratory issues are not moot because the Department allegedly continues to claim that it has the authority to issue non-standard licenses and that it has the authority to require applicants to produce additional immigration documents. Moreover, the Applicants contend that there is a live dispute because the Department has "never made any binding judicial admission that [it] lacked the statutory authority" to issue non-standard licenses. Finally, and most importantly, the Applicants urge that the issue of attorney's fees under the Declaratory Judgment Act was not mooted by the changes to the governing statutes and rules. *See Camarena v. Texas Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) (concluding that suit was not moot even though legislature had amended statute because there was live controversy regarding whether plaintiffs were entitled to recover their attorney's fees awarded in pursuing their declaratory claims); *see also Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642-43 (Tex. 2005) (concluding that insurance company's declaratory suit regarding whether policyholder's claim was covered was not moot even though jury had returned verdict in favor of policyholder in suit brought by neighbor because policyholder's request for attorney's fees under Declaratory Judgment Act breathed life into appeal and prevented it from being moot).

13

In addition to arguing that the Applicants' declaratory claims were mooted by subsequent changes in the governing framework, the Department also asserts that the district court did not have jurisdiction over the declaratory claims at the time of trial. Given our ultimate resolution that the district court never had jurisdiction over those claims, we need not address whether those claims were mooted by changes to the governing statutes and rules occurring after the district court issued its judgment.[7]

**The Applicants' Requested Declarations and Claim for Attorney's Fees**

In its first issue on appeal, the Department asserts that the district court did not have jurisdiction over the Applicants' claims under the Declaratory Judgment Act. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (explaining that subject-matter jurisdiction is question of law that appellate courts review de novo). As a corollary, in its fourth issue on appeal, the Department contends that district court did not have authority to award the Applicants attorney's fees under the Act.

As discussed previously, in the portion of their current live pleading seeking relief under the Act, the Applicants repeated the general arguments made in their prior pleading but also

---

[7] Although we do not reach the issue of mootness regarding the Applicants' declaratory claims, we do note that resolution of the mootness issue would likely involve consideration of the same jurisdictional matters discussed in the Department's other issues. As set out above, the Applicants contend that the attorney's fees issue is a live dispute that prevented this case from being entirely mooted by subsequent changes to the governing law. The issue of attorney's fees could only be a live dispute if the district court had jurisdiction over the declaratory claims to begin with. Accordingly, in addressing mootness as it pertained to the declaratory claims, we would necessarily have to decide whether the district court had jurisdiction over those claims during the trial. For the reasons more thoroughly explained in the opinion, we conclude that the district court did not have jurisdiction over those claims.

14

added five new and specific declaratory requests. In their final request, the Applicants asked the district court to declare that the Transportation Code does not authorize the Department to issue to individuals "lawfully residing" in the United States driver's licenses "that differ in appearance from standard driver's licenses."

The fifth requested declaration regarding the appearance of driver's licenses is essentially a repeat of the Applicants' prior challenge to the Department's memo under which the Department specified that driver's licenses issued to certain non-citizens will not have a standard appearance and will instead be oriented vertically and have the phrase "Temporary Visitor" affixed to the license. In our prior opinion, we determined that the Applicants did not have standing to pursue that challenge because they failed to allege "any cognizable legal effect on private persons as a result of the Department's September 2008 memorandum, as it merely alters the appearance of certain driver's licenses. The Appellees have not shown that receipt of a Texas driver's license that is standard in appearance . . . is a recognizable legally protected interest." *Salazar*, 304 S.W.3d at 906.

In the current appeal, the Applicants contend that they added additional plaintiffs after our prior ruling and that they also "alleged specific facts that demonstrate how [the Department's] policies" resulted in actual, concrete, and particularized injuries to the new plaintiffs. In particular, the Applicants point to various allegations that the Department's issuance of non-standard licenses caused "them to be treated differently as consumers in day-to-day transactions, interfered with their freedom to contract for services, and [in some cases] . . . misrepresented their immigration status by requiring their licenses to state they were 'temporary visitors.'" (Brief at 20). However, none of the added allegations demonstrate that receiving a license that is standard in appearance is a recognizable

15

legally protected interest.  Accordingly, for the reasons identified in our prior opinion, we must

conclude that the Applicants did not have standing to pursue their fifth declaratory request and that,

therefore, the district court did not have jurisdiction over that claim.[8]

Turning to their other four requests that were included in their amended petition, the

Applicants asked the district court to declare the following:  (1) that the Transportation Code does

not authorize the Department to deny a driver's license "or to adopt rules or implement policies

---

[8] In post-submission briefing, the Applicants contend that a recent case by the supreme court supports a determination that the Applicants had standing. *See Finance Comm'n v. Norwood*, No. 10-0121, 2013 Tex. LEXIS 491 (Tex. June 21, 2013).  In *Norwood*, the supreme court was confronted with a controversy regarding a constitutional amendment that authorized the legislature to "delegate to a state agency the power to interpret certain provisions of the Texas Constitution governing home equity lending." *Id.* at *4.  In that case, the supreme court determined that the agency's interpretation of the constitutional provisions was subject to judicial review under the Administrative Procedure Act, *id.* at *33-34, and that various homeowners had standing to pursue that type of review, *id.* at *49.  In light of that determination, the Applicants insist that their allegations were sufficient to establish standing in this case.

However, we believe that the Applicants' reliance on *Norwood* is misplaced.  When discussing why the homeowners had standing, the supreme court noted that the case confronted a "unique consideration" because of the safe-harbor provision of the constitutional amendment, which prohibits a borrower from being injured by a lender's compliance with the agency's interpretation of the provision even if the agency's interpretation is wrong. *Id.* at *38.  Stated differently, the supreme court determined that an injury "to the interest in obtaining a home equity loan resulting from the [agency's] misinterpretation of" the constitutional amendment must be sufficient to confer standing or else the agency's interpretations would be "final and absolute." *Id.* at *39.  Accordingly, the supreme court warned that the case presented "an exceptional context in which to assess standing" and that the unique constitutional interplay required less of a substantial injury than is typical to confer standing. *Id.* at *47-48.

In this case, there are no comparable constitutional concerns.  Moreover, it is worth noting that the supreme court was confronted with ascertaining standing under the Administrative Procedure Act and not the Declaratory Judgment Act, which is the law applicable to this issue.  In any event, we can find nothing in the language of *Norwood* that contradicts our prior determination that in order to establish standing in this case, the Applicants were required to show that they possessed a recognizable legally protected interest. *See Salazar*, 304 S.W.3d at 906.

16

providing for a denial of a driver's license . . . based on the length of time" that an applicant was authorized to reside in the United States; (2) that the Transportation Code does not authorize the Department to deny a driver's license "or to adopt rules or implement policies providing for a denial of a driver's license . . . based on the length of time remaining before expiration of the applicant's authorization to remain in the United States"; (3) that the Transportation Code does not empower the Department "to limit, or to adopt rules or implement policies that would limit, the duration of such licenses . . . to a period less than the standard duration"; [and] (4) that the Transportation Code does not allow the Department "to limit, or to adopt rules or implement policies that would limit, the duration of a license to the time remaining before expiration of the applicant's current authorization to reside in the United States."

Although the declarations are written in terms of the Transportation Code, they echo the relief that the Applicants sought under their rule challenge under the Administrative Procedure Act. Specifically, under the portion of their petition setting out their administrative claims, the Applicants argued that the requirements and restrictions imposed by the Department through its enactment of former Rules 15.24 and 15.171 were contrary to "controlling Texas statutes." Those policies and restrictions, as summarized above, form the basis for the Applicants' declaratory challenges. Moreover, when making their administrative claims, the Applicants refer to provisions of the Transportation Code that are also at issue in their declaratory claims.

After reviewing the Applicants' petition, it appears that the relief sought in the Applicants' declaratory claims is essentially the same as the relief that they sought through their administrative claims. Previously, this Court has explained that a party may not seek relief under

17

the Declaratory Judgment Act when that relief is redundant to relief available under the Administrative Procedure Act. *See Texas State Bd. of Pub. Accountancy v. Bass*, No. 03-09-00251-CV, 2011 Tex. App. LEXIS 294, at *28-29 (Tex. App.—Austin Jan. 14, 2011, no pet.) (mem. op.) (dismissing constitutional declaratory claim because it was "essentially duplicative of the relief" sought under Administrative Procedure Act); *SWEPI LP v. Railroad Comm'n*, 314 S.W.3d 253, 268-69 (Tex. App.—Austin 2010, pet. denied) (concluding that party's declaratory claims were redundant of administrative claims when both sets of claims were "based upon the same statutory construction arguments"); *Salazar*, 304 S.W.3d at 906 n.7 (dismissing plaintiffs' declaratory claims because they were redundant of other claims); *Texas State Bd. of Plumbing Exam'rs v. Associated Plumbing-Heating-Cooling Contractors of Tex., Inc.*, 31 S.W.3d 750, 753 (Tex. App.—Austin 2000, pet. dism'd by agr.) (stating that parties challenging validity of rule are bound by Administrative Procedure Act and may not seek relief under Declaratory Judgment Act).

When arguing in support of the district court's judgment, the Applicants assert that their declaratory claims are not redundant of their administrative claims because resolution of the two sets of claims "turn[s] on different statutory construction issues." Specifically, the Applicants contend that they presented rule challenges in their administrative claims and that resolving those claims requires construction of sections 521.181 and 521.201 of the Transportation Code, which describe individuals who are and are not eligible to receive a driver's license. *See* Tex. Transp. Code §§ 521.181, .201. On the other hand, the Applicants insist that their declaratory claims pertain to the appearance of driver's licenses issued by the Department and that deciding those issues involves construing sections 521.121 and 521.123 of the Transportation Code, which set out what

18

must appear on a driver's license and also describe what the non-standard licenses given to people under the age of 21 look like. *Id.* §§ 521.121, .123. In addition, the Applicants also assert that their declaratory claims were not entirely redundant of their administrative claims because they pursued relief that went beyond their rule challenges under the Administrative Procedure Act. Specifically, the Applicants refer to the declaratory challenge to the policies contained in the Department's 2008 memo regarding the appearance of issued licenses and assert that none of the claims under the Administrative Procedure Act pertain to the memo.

As discussed previously, we have already determined that the district court did not have jurisdiction over the Applicants' declaratory claim regarding the appearance of driver's licenses issued by the Department and challenging the Department's memo. The remaining declaratory requests all concern limitations imposed on the effective period of driver's licenses issued by the Department and improperly denying certain non-citizens driver's licenses entirely. Accordingly, we cannot agree with the Applicants' assertion that resolution of their four remaining declaratory requests pertained solely to provisions of the Transportation Code regarding what must appear on standard driver's licenses as well as licenses issued to individuals under the age of 21.

However, even assuming that some of the remaining requested declarations would involve consideration of the Transportation Code provisions pertaining to the appearance of driver's licenses, the Applicants also challenged the decision by the Department to alter the appearance of the licenses given to certain non-citizens in their administrative claims. Specifically, the Applicants asserted that the Department's actions were inconsistent with the provisions of the Transportation Code governing the appearance of driver's licenses and specifically referenced section 521.123.

19

Accordingly, we cannot agree with the Applicants' contention that the relief requested under their two sets of claims involve construction of different statutory provisions.

In light of the fact that the relief that the Applicants sought in the four declaratory claims discussed above is redundant of their administrative claims, we must conclude that the district court did not have jurisdiction over the declaratory claims.

In its judgment, the district court also declared that the Department could not require individuals seeking driver's licenses "to present immigration documents that the United States authorities do not require such persons to have." As discussed previously, the Applicants did not request this declaration in their petition and instead made the request in a subsequently filed motion for summary judgment. Essentially, the Applicants asserted that the Department was improperly requiring non-citizens applying for licenses to produce additional identifying documentation. Further, the Applicants claimed that the Department had listed these additional requirements in a Temporary Visitor Issuance Guide.

In arguing that the district court did not have jurisdiction to enter this declaration, the Department presents various jurisdictional arguments including that the issuance of the declaration was improper because the Applicants failed to show that the Department had engaged in any ultra vires actions. In supporting the district court's declaration, the Applicants contend that the Transportation Code provisions in effect during the relevant time did not authorize the Department to "require lawfully admitted drivers' license applicants to produce federal immigration documents for which they did not qualify for or need for any federal immigration purposes." Further, the Applicants insist that no statutory provision in effect granted the Department "discretion to require

20

additional federal documentation of a driver's license applicant whose identity has already been established by his passport, stamped by the U.S. Department of Homeland Security 'Asylum Status Granted Indefinitely,' and by the Immigration Court order."

Generally speaking, the doctrine of sovereign immunity bars suits against the State and its entities. *Texas Adjutant General's Office v. Ngakoue*, No. 11-0686, 2013 Tex. LEXIS 681, at *5-6 (Tex. Aug. 30, 2013). However, the supreme court has recognized that declaratory suits seeking to require State officials "to comply with statutory or constitutional provisions are not prohibited by sovereign immunity." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). To properly fall within this ultra-vires exception, a party must allege that an official acted completely outside of his jurisdiction and may not simply allege that an official failed to comply fully "with all of the intricacies" of a governing regulatory framework. *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 528 (Tex. App.—Austin 2002, pet. denied).

The current statutes as well as those in effect at the time that the suit was filed specified that applicants for driver's licenses "must apply in a manner prescribed by the department," Tex. Transp. Code § 521.141, and that an applicant's proof of identity must be "satisfactory to the department," *id.* § 521.142(a). Moreover, the statutes explain that an "application must include any other information the department requires to determine the applicant's identity, residency, competency, and eligibility as required by the department." *Id.* § 521.142(e).

In light of these broad delegations of power by the legislature, we cannot agree that the Department's decision to require certain non-citizen applicants to file additional immigration documentation as proof of identity when seeking driver's licenses constituted actions taken

completely outside the Department's authority. Accordingly, we must conclude that the Applicants' allegations were insufficient to invoke the ultra-vires exception, *see Texas Comm'n of Licensing & Regulation v. Model Search Am., Inc.*, 953 S.W.2d 289, 292 (Tex. App.—Austin 1997, no writ) (explaining that allegations that agency interpreted legislative directive incorrectly does not give rise to ultra-vires claim when legislature empowered agency to interpret that statutory provision), and therefore that the district court did not have jurisdiction over the Applicants' final declaratory claim.

In light of our determination that the district court did not have jurisdiction over any of the Applicants' declaratory claims, we must conclude that the district court erred by failing to dismiss those claims, and therefore, we sustain the Department's first issue on appeal. For that reason, we also sustain the Department's fourth issue regarding the award of attorney's fees under the Declaratory Judgment Act.[9]

---

[9] In reaching this result, we are mindful of our recent determination in *Zurita v. SVH-1 Partners, Ltd.*, No. 03-10-00650-CV, 2011 Tex. App. LEXIS 9670, at *25-26 (Tex. App.—Austin Dec. 8, 2011, pet. denied) (mem. op.), which upheld an award of attorney's fees under the Declaratory Judgment Act even though the trial court determined that it did not have jurisdiction over the declaratory requests. In *Zurita*, a defendant sought declarations against the plaintiff, but the trial court determined that it did not have jurisdiction over the declaratory claims. *Id.* at *17. However, the trial court did award attorney's fees to the plaintiff under the Declaratory Judgment Act. *Id.* at *23-24. In upholding the attorney's fee award, this Court determined that even though the trial court did not have jurisdiction over the declaratory claims, the nature of the proceeding was a suit under the Declaratory Judgment Act. *Id.* at *26. Although that case may stand for the logical proposition that a person against whom declarations are sought may recover attorney's fees when defending himself against those claims by challenging the court's jurisdiction to consider them, we do not believe that the case stands as support for the idea that attorney's fees awarded to a person seeking declaratory relief can be upheld if an appellate court determines that the trial court did not have jurisdiction over those claims to begin with.

**The Department's Remaining Issues**

In the Department's second issue, it asserts that the district court erred by either failing to strike the Applicants' declaratory claim added in their motion for summary judgment or, alternatively, by failing to grant a continuance after the claim was added. In its third issue, the Department contends that many of the individuals who were added to the suit after this Court's prior opinion did not have standing to pursue the Applicants' declaratory claims. In its sixth issue, the Department argues that the attorney's fee award was not equitable or just as required by the Declaratory Judgment Act. *See* Tex. Civ. Prac. & Rem. Code § 37.009. Given our rulings above, we need not address these issues on appeal.

## CONCLUSION

Having determined that the Applicants' administrative claims are moot and that the district court did not have jurisdiction over the Applicants' declaratory claims, we vacate the judgment of the district court and render judgment dismissing the cause.

_____

David Puryear, Justice

Before Justices Puryear, Henson, and Goodwin
    Justice Henson not participating

Vacated and Rendered

Filed: October 31, 2013

23